UNITED STATES of America, Appellee,

v.

Ralph PETROZZIELLO, Defendant, Appellant.

No. 76–1111.

United States Court of Appeals, First Circuit.

Argued Nov. 4, 1976.

Decided Jan. 21, 1977.

 

Richard H. Gens, with whom Martin K. Leppo and Leppo & Paris, Boston, Mass., were on brief, for appellant.

Wayne B. Hollingsworth, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and GIGNOUX,* District Judge.

COFFIN, Chief Judge.

In early October, 1975, appellant was tried and convicted of conspiring to distribute heroin, of possessing heroin with intent to distribute it, and of carrying a firearm while committing these crimes. All three convictions grew out of a drug transaction that took place on February 13, 1975. On that day, federal agents arranged to purchase heroin from a drug dealer. The transaction was to take place at a Chinese restaurant later in the day. The agents drove the dealer to his "connection's" house. A few minutes later, appellant and the dealer left the house in appellant's car; they drove to the Chinese restaurant but left before the agent who arranged the deal could arrive. The agent later talked to the dealer by phone and persuaded him to return. Again the dealer and appellant showed up in appellant's car. The dealer entered the doorway of the restaurant and showed a package of heroin to the federal agent, who arrested him. Other agents moved in on appellant, who made a brief effort to drive away but found himself blocked by the agents' car.

When appellant was arrested, a student trainee took charge of his car. As the trainee was getting in, he noticed a gun on the front seat. At trial, the gun was introduced over appellant's motion to suppress, a ruling he contests in this appeal. The gun came into plain view when the trainee sat down; the only issue is whether he had a right to be sitting there. *Coolidge v. New*

---

* Of the District of Maine, sitting by designation.

*Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Vehicles used to transport controlled substances may be forfeited. 21 U.S.C. § 881(a)(4). At the time of the arrest the agents had every reason to believe that the dealer's heroin had traveled to the scene in appellant's automobile. We need not decide whether this evidence alone would justify a forfeiture; it certainly provided probable cause to seize the car for possible forfeiture proceedings. The trainee's entry was necessary to the seizure. Introducing the gun at trial was therefore proper.

■ After his arrest, the appellant was given *Miranda* warnings. He did not sign a waiver, but an agent nonetheless asked him several "routine" questions, one of which concerned drug use. Appellant's statement to the agent that he did not use drugs was introduced over a general objection to show that appellant intended to distribute the heroin found in his possession. *See* 21 U.S.C. § 841(a)(1).

Continued custodial questioning, even "routine" questioning, after the accused has invoked his right to silence presents a serious constitutional issue. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The government contends that the statement was properly admitted; it disputes appellant's claim that he refused to waive his rights. We need not delve deeply into a factual controversy that makes its first appearance on appeal, for despite pretrial notice that appellant's statement would probably be used in this fashion, appellant made no effort to suppress the statement, nor did he make a specific objection during trial.

Appellant falls back on the plain error rule, F.R.Crim.P. 52(b), but it cannot save him. If this was error, it can hardly be called "plain". The testimony was so tangential that we can readily appreciate why court and counsel overlooked any problem caused by the testimony. Apart from any error not being plain, we cannot tell whether this was error at all. Appellant's failure to raise the issue below means that a critical factual dispute remains unsolved. We cannot find plain error on this silent record. *See Sykes v. United States*, 373 F.2d 607, 613 (5th Cir. 1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967).

■ Appellant's last claim is that the evidence against him was insufficient. In particular, he focuses on the dearth of independent, non-hearsay evidence that a conspiracy existed between appellant and the dealer. Evidence of this sort, he argues, is a necessary foundation for the hearsay statements of the dealer, which were admitted under the co-conspirator exception. Because appellant was tried a few months after the new federal rules of evidence took effect, we must consider their impact. The new rules recognize the co-conspirator exception; statements are "not hearsay" if they are offered against a party who conspired with the declarant, and if they are made during and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E). However, the rules make a change in the way the co-conspirator exception is applied. In this circuit, the jury has had a prominent role in deciding whether the co-conspirator exception can be invoked. Trial courts instruct the jury that a co-conspirator's hearsay may be used against a defendant only if the defendant's membership in the conspiracy has been established by independent, non-hearsay evidence. *United States v. Honneus*, 508 F.2d 566, 577 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). The new rules, however, give the jury only a narrow responsibility for deciding questions of admissibility. Most issues are resolved finally by the judge.[1] Contrary to this division of respon-

---

1. *See* Fed.R.Evid. 104(a) & (b):

   "(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

   "(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the

sibility, the trial judge below allowed the jury to weigh the admissibility of the dealer's statements to the agents. Appellant, however, does not argue that this was error, and we will not disturb the verdict on this ground. The added layer of fact-finding may not be needed, Weinstein's Evidence ¶ 104[05], but it can seldom prejudice a defendant.

■ That, however, is not the end of the matter. The new rules, by eliminating the jury's role, place a greater burden on the judge, for his decision is now conclusive. In years past, this circuit has followed the general rule that the judge should admit hearsay against a defendant if the judge finds enough independent, non-hearsay evidence to make a prima facie case of conspiracy. *United States v. Johnson*, 467 F.2d 804 (1st Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *see also United States v. Nixon*, 418 U.S. 683, 701 n. 14 (1974). This standard makes sense when the jury has the last word; the judge should refuse to admit a co-conspirator's hearsay only when no reasonable jury could find that there was a conspiracy. But rule 104(a) requires that questions of admissibility be "determined" by the judge, and finding a prima facie case is not the same as "determining" that a conspiracy existed. A higher standard is implicit in the judge's new role.

Other changes in the rules also suggest a higher standard. The new rules permit a trial judge to base his "determination" on hearsay and other inadmissible evidence.

Fed.R.Evid. 104(a). Continued reliance on a prima facie standard will either broaden the co-conspirator exception unconscionably or plunge the courts into metaphysical speculation about how a prima facie case can be built on inadmissible evidence.[2]

Although the prima facie standard is no longer appropriate, we see no reason to require that conspiracy be proved beyond a reasonable doubt. That is the standard the jury will apply to the evidence as a whole. The judge is ruling on admissibility, not guilt or innocence; the government's burden need not be so great. *See Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *but see* Weinstein's Evidence ¶ 104[05]. The ordinary civil standard is sufficient: if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible.

■ Here, the judge applied a prima facie standard rather than the one we find appropriate.[3] But appellant never objected to the standard applied, nor did he make the arguments we now find persuasive. Without the benefit of an appellate decision on the issue, the judge's use of the traditional standard was not plain error. *Cf. United States v. Honneus, supra*, 508 F.2d at 577. Moreover, the non-hearsay evidence of conspiracy was strong. It showed that appellant and the dealer arrived at the restaurant in appellant's car. Appellant watched over his shoulder as the dealer

---

fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

2. The use of inadmissible evidence to determine the existence of a conspiracy seems to contradict the traditional doctrine that conspiracy must be proved by independent, non-hearsay evidence. It suggests that a conspiracy may be proved by the very statement seeking admittance. While the logic of the new rule may permit bootstrapping of this sort, earlier case law rejects it. *Glasser v. United States*, 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942). At the least, the *Glasser* teaching survives as an admonition that trial judges should

give little weight to bootstrap evidence in deciding whether to admit hearsay under the co-conspirator exception. We do not chart this terra incognita in detail, for we conclude below that the admissible evidence was enough by itself to meet the standard we apply.

3. The judge insisted that the government present all its non-hearsay evidence first. He then decided whether that evidence permitted reliance on the co-conspirator exception. Nothing in the new rules or this opinion requires that the judge's meticulous approach be abandoned. Although time-consuming, it avoids the danger that hearsay will be admitted in anticipation of a later showing of conspiracy that never materializes.

entered the doorway to complete the sale. When agents approached the car, showing their badges but not their weapons, appellant nearly ran one down in an attempt to escape. At the time of his arrest, appellant was carrying heroin, and he had a loaded gun on the front seat of his car. We think this evidence makes it more likely than not that appellant and the dealer had conspired to sell heroin to the federal agents.

*Affirmed.*