**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alberto Cruz FONTANEZ, Defendant-Appellant.**

**No. 79–1608.**

United States Court of Appeals, First Circuit.

Argued May 5, 1980.

Decided Aug. 12, 1980.

17. See n. 8, *supra*.

Jose C. Aponte, Jr., Santurce, P. R., by appointment of the court for defendant-appellant.

Justo Arenas, Fernandez, Asst. U. S. Atty., Hato Rey, P. R., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant, Alberto Cruz Fontanez, appeals a jury conviction of conspiring with his brother,[1] Anibal Cruz Fontanez, and others unknown, to possess and distribute approximately 15,000 grams of cocaine (Count I) and using the telephone to facilitate the distribution [2] of about 10,000 grams of cocaine (Count II).

Defendant makes three assignments of trial error: (1) the admission of hearsay statements of the named coconspirator, (2) the admission of testimony of a government witness, and (3) the admission into evidence of a tape recording containing statements

---

1. There was some confusion as to whether the named and indicted coconspirator was defendant's brother or sister. It is clear that Anibal Cruz Fontanez dressed as a man. Whatever the sex, the coconspirator was a fugitive at the time of trial.

2. 21 U.S.C. § 843(b) provides:

    (b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

by the defendant and the named coconspirator. Defendant also claims that the district court erred in setting aside its own order granting a new trial.

█ The admission of the coconspirator's hearsay statements is attacked primarily because the court failed to find that a preponderance of the evidence showed "that the declarant and the defendant were members of a conspiracy when the hearsay statement was made and that the statement was in furtherance of the conspiracy." *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977). *See also United States v. Martorano*, 557 F.2d 1 (1st Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). Because of some misunderstanding as to how and when during a trial the *Petrozziello* rule is to be applied, we have recently explicated the procedure to be followed. *United States v. Ciampaglia, et al.*, No. 79–1269 (1st Cir. July, 1980). Under *Ciampaglia*, the district court must make a final *Petrozziello* determination on the record at the close of all of the evidence out of the hearing of the jury. Defendant argues that it was error for the court not to hold either a pretrial hearing or a hearing outside of the presence of the jury to determine whether the government could meet the preponderance of the evidence test before admitting the hearsay statements. We have not held that such procedure is required and did not do so in *Ciampaglia*. Appellant offers no argument that convinces us that this is a case where a hearing was mandated by the language of Fed.R.Evid. 104 or that the district court abused its otherwise broad discretion in refusing to hold a separate hearing out of the hearing of the jury. This being so, the only questions to be addressed relevant to the coconspirator's statements are whether the court made the findings required *Petrozziello* and, if it did, whether, taken in the light most favorable to the government, the evidence sufficed to support the determination.

When the statements of the coconspirator were introduced, the court instructed the jury in accord with the pre-*Petrozziello* rule of *United States v. Honneus*, 508 F.2d 566, 576–77 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). After discussion with the attorneys and consideration of *Petrozziello*, the court ruled:

> Well, counsel, I believe in my ruling permitting the evidence to be presented, and the fact that I gave limiting instructions to the jury, if not expressly, at least impliedly; there is a ruling on my part that I believe that there is sufficient evidence to show that there is a conspiracy.

Because of continued objections by defense counsel, this ruling was reaffirmed at least three times. Although the ghost of *Honneus* may still be flitting about, it causes no harm and, as the district court pointed out here, is probably beneficial to a defendant. It is the government, not a defendant, which is haunted. We reiterate what we said in *Petrozziello*, "The added layer of fact-finding may not be needed, Weinstein's Evidence ¶ 104[05], but it can seldom prejudice a defendant." *United States v. Petrozziello*, 548 F.2d at 23.

█ We now turn to the key issue: whether the government proved by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members of it at the time the declaration was made, and that the declaration was in furtherance of the conspiracy. Prior to the admission of the hearsay statements, government undercover agent Robert Alvarez had testified to the following effect. On November 8, 1978, he and another paid informant, Alberto Larrain, met with the defendant at Torre de la Reina Restaurant in San Juan. Alvarez was equipped with a device known as a Kel, which could transmit conversation to another agent some distance away. Special DEA Agent Jorge, who had a receiving and recording apparatus, followed Alvarez and Larrain. Alvarez met defendant at the bar in the restaurant and was told that the amount of cocaine to be sold was fifteen kilos, not ten kilos as originally agreed. Alvarez said this posed a problem because he only had enough money for the smaller amount and asked how much more the addi-

tional amount would cost. Defendant said that he did not know and would have to ask his brother. He told Alvarez that, after he found out from his brother the exact amount of additional cocaine and the cost, he would contact Larrain and Larrain would convey the information to him. Alvarez was then to make arrangements to get the money and buy the fifteen kilos of cocaine.

The following day, Alvarez and Larrain went to defendant's apartment. Defendant was not there. They were admitted by a man and a woman. The man introduced himself as Anibal Cruz Fontanez, brother of the defendant, and said the woman was his wife. After about an hour of waiting, Anibal left the apartment with Alvarez and Larrain who drove him to a gasoline station so he could use the telephone. All three then returned to the apartment. After waiting in vain three hours for defendant to appear, Alvarez told Anibal that he needed to know the exact amount and price of the cocaine. Anibal wrote the questions down on a napkin. Alvarez and Larrain then left. During this episode, Alvarez was equipped with the Kel transmitter and Agent Jorge was in a car outside the apartment with the receiving and recording apparatus.

After Alvarez returned to the DEA office, Larrain called him and then the defendant came on the line. The telephone conversation between defendant and Alvarez was recorded. Defendant told him that there had been a mix-up for which he was sorry, and that he was trying to get the ten kilos. Arrangements were made to meet at the Carib Inn Hotel in Isla Verde at 8:00 P.M. that evening.

Alvarez met Larrain, defendant, and defendant's brother, Anibal, in the lobby of the Carib Inn as planned. They all went up to Alvarez' room. There was discussion about some problems relative to the proposed sale. Alvarez was told by defendant and his brother that all the cocaine they could get now was one and one half kilos. It was explained that this was in New York city and that, if Alvarez paid $75,000 for it, Anibal or his wife would take the money to New York and, after receiving it, the seller would make a phone call to someone in Puerto Rico who had twenty-seven kilos and instruct him to sell Alvarez as much as he wanted. Defendant and Larrain then went to the bar and Alvarez and Anibal Cruz Fontanez sat together in the lounge out of earshot of defendant.

When Alvarez started to testify about what Anibal said, defense counsel objected. Anibal's statements [3] were admitted as an exception to the hearsay rule in accord with the procedure already discussed.

We think it clear that, at this juncture, the government had established by a preponderance of the evidence that defendant Anibal conspired to sell cocaine to Alvarez, that the conspiracy existed at the time Anibal spoke separately to Alvarez and that the statements were made in furtherance of the conspiracy. The court's ruling, under these circumstances, could not have caused defendant any prejudice.

There was further testimony, after the admission of the statements, of a three-way conversation between defendant, his brother, and Alvarez during which Alvarez was told that defendant was one of the ten major cocaine distributors in Puerto Rico, and Anibal said that "we" could get Alvarez anything he wanted. Since, under our recent rule in *Ciampaglia*, the preponderance of the evidence ruling should not be made until the close of all the evidence, this testimony was an additional basis for the admission of the statements.

Although the *Honneus* instruction was not necessary and the district judge may not have correctly stated the *Petrozziello* standard, we find that the admission of the statements was not erroneous.

3. The statements were to the following effect: that the cocaine was hidden in a very dangerous place, that Alvarez should get to know Anibal and his brother better, that the cocaine was of good quality, and that, if the one and one-half kilos were purchased, the people he knew would sell Alvarez any amount.

The admission of the coconspirator's statements is complicated by a post-trial ruling of the district court. After verdict, defendant brought a motion for a new trial on the grounds, among others, that the court erred in admitting the hearsay statements. The district court granted the motion, finding, in reliance on *United States v. James*, 590 F.2d 575 (5th Cir. 1979), that it had committed reversible error in admitting the statements. This order was rescinded after it was pointed out to the court that the motion for a new trial was not timely. The district court was clearly correct in finding that the seven-day filing rule, Fed. R.Crim.P. 33, is jurisdictional and that it had no authority to entertain the motion for a new trial, which was one day late. While we do not read *James* as did the district court, to impose a more stringent standard than *Petrozziello*, which *James* cited with apparent approval, we emphasize that the bench mark cases for this circuit are *Petrozziello* and *Ciampaglia*.

Defendant attacks Alvarez' testimony on the grounds that it was nonresponsive and vague in pinpointing the conspiracy. Our reading of the transcript reveals no error in admitting the testimony of Alvarez as to what was said and by whom at the Carib Inn. Any vagueness or nonresponsiveness was a matter for cross-examination and ultimately a question for the jury.

The recorded conversation, to which Alvarez had testified, was clearly admissible. A proper foundation was laid. Although the recording may not have been clear as a bell, the district judge did not abuse his discretion in allowing the jury to listen to it.

Nor was it improper for the court to allow a transcript of the recording to be furnished to the jurors while they listened to it. We have already discussed the hearsay aspects of that portion of the recording containing the statements of the indicted coconspirator.

There is one final matter that requires our attention. As the government has pointed out, the sentence on Count II of fifteen years exceeds the statutory limit. 21 U.S.C. § 843(c) provides for a sentence of "not more than 4 years, a fine of not more than $30,000, or both."

We find no merit in appellant's remaining arguments.

*The conviction on both counts is affirmed. Remanded for resentencing on Count II.*