**UNITED STATES of America, Appellee,**

v.

**Thomas A. GUERRO, Defendant, Appellant.**

**No. 81–1821.**

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1982.

Decided Nov. 17, 1982.

Nelson S. Baker, Boston, Mass., by appointment of the Court, for appellant.

Janis M. Berry, Sp. Atty., U.S. Dept. of Justice, Boston, Mass., with whom William F. Weld, U.S. Atty., and Jeremiah T. O'Sullivan, Sp. Asst. U.S. Atty., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and SWYGERT *, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

On this appeal from a conviction for conspiracy to distribute a controlled substance—phencyclidine (PCP)—in violation of 21 U.S.C. §§ 841(a)(1) & 846, defendant Guerro contends that the evidence did not warrant the court's finding of conspiracy, and, particularly, that the admission of certain statements by an alleged co-conspirator violated Rule 801(d)(2)(E) of the Federal Rules of Evidence and the standards estab-

lished in *United States v. Petrozziello*, 1 Cir., 1977, 548 F.2d 20, and *United States v. Ciampaglia*, 1 Cir., 1980, 628 F.2d 632, *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221. We find no error.

Defendant was indicted, with three others, Merlino, Travers, and Fox, for conspiracy to distribute. The three others were further indicted for the substantive offense. They pled guilty. Guerro was tried alone, and convicted. Apart from the objected-to testimony, the evidence showed a conspiracy to distribute PCP from the Massachusetts Correctional Prison Project at Medfield State Hospital (Hospital) and the TRC Generator Company (TRC) in Dorchester, Massachusetts. During the course of the conspiracy, which the court, without objection, established as existing between February 18, 1978 and February 5, 1979, Guerro was on parole from a state prison sentence, and worked at the Hospital as a paralegal. During the same period Merlino was an inmate at the Hospital and Travers worked at TRC. There was evidence that Merlino distributed PCP directly from the Hospital, and that Travers and Fox distributed it from TRC. There was no evidence that Guerro actually distributed PCP. There was, however, considerable evidence that he transported PCP in and out of the Hospital and TRC. There was also evidence that he associated with Merlino at the Hospital. Additionally, he was shown to have procured supplies that are used to make PCP, and even to have such supplies delivered directly to him at the Hospital. Finally, he made incriminating statements to government agents.

The objected-to hearsay statements were made by Merlino in various conversations he had with undercover agent Keefe.[1] According to Keefe's testimony, he met with Merlino at the Hospital on January 18 to discuss a possible purchase of cocaine. Merlino also offered to sell Keefe PCP. Keefe replied that he was without funds to purchase PCP because he had not been fore-

1. The first conversation on January 18, 1979 was not taped. Taped conversations of January 24 and January 31 were played to the jury.

warned that Merlino would have some. Merlino stated that he had not known "his man" would bring it up on that day, but that "his man" had brought up a "pound of the green stuff"[2] and that "his man had it up here now." Keefe also testified that just before he met with Merlino he saw Guerro's car in the parking lot outside. Another agent testified that he saw Guerro drive away from the Hospital that day.

On January 24 Keefe telephoned Merlino and tried to arrange a purchase of PCP. Merlino stated that he was having difficulty procuring supplies of PCP because "I haven't seen that guy at all since he left that day [January 18]." And, again, "He hasn't been around. I, uh, kind of think he's out of town." On January 31 Keefe again telephoned Merlino regarding the purchase of PCP.

Keefe. "Anything new on that green?"

Merlino. "Uh, no. I haven't talked to the guy."

Keefe. "Nothin, huh."

Merlino. "He said sooner than ten days and I don't know when those ten days are . . . ."

Keefe. "Yeah."

Merlino. "I should be seein' him towards, uh, the weekend."

Keefe. "Mike was telling me that your man had some problems, he got locked up or something?"

Merlino. "Yeah, uh . . . ."

Keefe. "Is that gonna be a problem or what?"

Merlino. "Well, uh, it very well could be."

The problem lay in the fact that on January 23 Guerro was arrested in New York on charges of selling plastic explosives. Taken in context, the conversations provided a basis for inferring that he was the supplier of PCP referred to by Merlino, and clearly were prejudicial if erroneously admitted. Defendant objected, when the statements were originally offered, on the ground of hearsay, and again objected to the *Petrozziello-Ciampaglia* finding at the end of trial.

Rule 801(d)(2)(E) provides that a "statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Noting that this changed our prior procedure, we pointed out in *United States v. Petrozziello*, 548 F.2d, ante, at 23, that the trial court should admit into evidence hearsay statements under Rule 801(d)(2)(E) "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy . . . ."

■ There is no merit in defendant's claim that the evidence was insufficient to support the court's finding that the government had proved by a preponderance of the evidence that Merlino and Guerro participated in a conspiracy to distribute PCP. It is not an objection that the evidence was circumstantial. *E.g., United States v. Patterson*, 1 Cir., 1981, 644 F.2d 890, 893. Our cases do not always contain direct indicia of a conspiratorial relationship. *E.g., United States v. Nardi*, 1 Cir., 1980, 633 F.2d 972; *United States v. Pappas*, 1 Cir., 1979, 611 F.2d 399. In determining defendant's involvement in the conspiracy, the court could, and did, look to the evidence of his many suspicious movements in and around the Hospital, his interaction with Merlino, his trips to TRC, his procuring supplies that are used to make PCP, his making incriminating statements to government agents, Merlino's sales of PCP from the Hospital, and Travers' and Fox's sales of PCP from TRC. Finally, although standing alone or with only very little additional evidence, Merlino's statements themselves would not be sufficient to establish Guerro's involvement in the conspiracy, the court could look to those statements as further evidence of Guerro's participation. *See United States v. Martorano*, 1 Cir., 1977, 557 F.2d 1, 11, *reh. denied*, 561 F.2d 406, *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515. The total was clearly ample.

---

**2.** This could be found to mean PCP.

■ Nor do we have difficulty with a finding that Merlino's statements, apart from the question of whether defendant was still a participant, furthered the conspiracy. In both the January 24 and 31 conversations Merlino was willing to sell, but was temporarily unable to do so because of his problems with his supplier. Merlino still had hopes of a contact "towards ... the weekend." Merlino's statements were not, as defendant claims, part of an idle conversation lamenting the end of a conspiracy. *Cf. United States v. Miller,* 5 Cir., 1981, 664 F.2d 94, 98. An ongoing transaction was contemplated, and the conversations reflect an unsuccessful attempt by Merlino to further the aims of the conspiracy. Thus, defendant's argument can succeed only if we interpret the "in furtherance of" language in Rule 801(d)(2)(E) to require actual achievement. This restrictive interpretation is unwarranted. *See, e.g., United States v. Handy,* 8 Cir., 1982, 668 F.2d 407, 408 ("intended to further"); *United States v. Peacock,* 5 Cir., 1981, 654 F.2d 339, 350 ("served the conspiracy"). Success is never a necessary attribute of a conspiracy.

■ We have more trouble, however, with the court's finding that Merlino's statements were made "during the course" of Guerro's participation in the conspiracy. Since Guerro was arrested in New York on January 23, his involvement in the conspiracy at the time of the January 24 and 31 telephone conversations presents some difficulty. However, although arrest may often end a defendant's role in a conspiracy, each case must be decided on its own facts. *E.g., United States v. Mason,* 9 Cir., 1981, 658 F.2d 1263, 1269–70. *See also, United States v. Fortes,* 1 Cir., 1980, 619 F.2d 108, 112. Being in jail would not necessarily destroy these parties' ardor. Guerro was arrested for an unrelated offense, and might well be released on bail, or transferred to Boston, where he was on parole. From the conversations themselves it is apparent that Merlino contemplated a continuance of the relationship although he knew of the arrest. This was probative. For so short a period the court could conclude that Guerro re-

mained involved. *Cf. United States v. Mason,* 658 F.2d, ante, at 1269–70; *United States v. Testa,* 9 Cir., 1977, 548 F.2d 847, 852.

*Affirmed.*