UNITED STATES of America, Appellee,

v.

Alan REYNOLDS, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Richard SYPHERS,
Defendant, Appellant.

Nos. 86–1870, 86–1871.

United States Court of Appeals,
First Circuit.

Heard July 28, 1987.

Decided Sept. 2, 1987.

Maurice R. Flynn, III, Boston, Mass., by appointment of the court, for appellant Alan Reynolds.

John C. McBride, with whom McBride, Wheeler & Widegren, Boston, Mass., was on brief, for appellant Richard Syphers.

William H. Kettlewell, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, NOONAN* and SELYA, Circuit Judges.

NOONAN, Circuit Judge.

Alan Reynolds and Richard Syphers appeal from conviction of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846. Syphers appeals an additional conviction of possessing cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). Their appeals rests on a challenge to the admission of a statement by a co-conspirator and their challenge to the sufficiency of the evidence against them. We affirm their convictions.

*The Case Against the Defendants.* The evidence against Syphers was as follows: On December 19, 1985 he was telephoned by Peter Ross. (Ross later pleaded guilty to cocaine charges arising out of the events involving the two defendants here.) Ross, earlier on the evening of that day, had negotiated to sell cocaine to John Kelly, a Special Agent of the Drug Enforcement Administration. On January 7, 1986 Ross told Patrick Dawson, a government informant, that his partner was a 26–year-old man named Richard from Portsmouth, New Hampshire, who ran a survival games business. On January 28 Ross telephoned

* Of the Ninth Circuit, sitting by designation.

Syphers and two hours later telephoned Kelly to set the terms for selling the cocaine to him. On January 29 Ross asked his girlfriend, Cathy Brown, to lend her car to Syphers. On January 30 Brown took a telephone call from Kelly on the basis of which she told Ross and Syphers that Jack in Boston had told her that they were "sitting" on a large amount of money. On January 31 Ross visited Syphers and also called him three times in the course of the evening. On February 2 Syphers visited Ross at 9:00 a.m.; thereafter Ross informed Kelly that the deal was ready. Later in the day Syphers checked into a Howard Johnson's in Revere; he was driving Brown's car.

On February 3 at 4:40 p.m. Ross called Kelly to confirm details of the deal. He could be heard speaking to someone in the background he called Rick; the answering voice was identified as that of Syphers. At 5:50 to 5:55 of the same afternoon Ross and Syphers were seen separately in the parking lot of a Holiday Inn in Peabody. Two hours later Ross met Kelly in this lot and Special Agent Bonnie Alexander showed Ross $140,000 in cash. Within the hour Ross handed Kelly one kilogram of cocaine. At about the same time Syphers and an unidentified Hispanic man entered the Holiday Inn.

■ The evidence, it is apparent, consisted of bits and pieces, some of them innocent and insignificant enough in themselves, *e.g.*, the borrowing of Brown's car, others highly probative, *e.g.*, Ross' identification of his partner by details that fitted Syphers to a T. The combination of all the bits and pieces was probative of guilt. The coincidences of timing, the pattern of calls, the physical association of Ross and Syphers close to the closing of the deal could not have an innocent explanation; or so a reasonable jury could conclude. We will not disturb the jury's reasonable inference that Syphers was engaged with Ross in the distribution of cocaine.

■ The evidence against Reynolds consists in the following: On the evening the deal was closed Ross and Reynolds met Kelly and drove to the Holiday Inn parking lot in Peabody. After Bonnie Alexander had displayed the cash, Ross left to get the cocaine while Reynolds stayed with Kelly. In a conversation recorded by Kelly, Reynolds stated he was here as a "more or less security type right now ... I knew a little bit about it cause if I didn't I wouldn't be sitting here right now." Referring to the sources of supply he stated, "supposedly they'll be around they'll be in the area. They don't want to be seen and they don't want to be noticed." He observed, "Things ain't going to plan too as far as what I was supposed to be here for. Peter was supposed to be sitting here and I was supposed to be going to get it." He also said, "But regardless I'm getting my cut out of it. I'm there. You know what I'm saying."

These statements are treated now by Reynolds as bluster or bravado induced by fear. This explanation is not compelling. A reasonable jury could infer from Reynolds' arrival with Ross at the place where the deal was to be carried out and from his recorded statements to Kelly that he was a conspirator with Ross in selling the cocaine.

■ *The Co-Conspirator's Statement.* Syphers and Reynolds both attack the admission of Ross' description on January 7 of his partner. The statement was properly admitted on a provisional basis, pending the trial court's finding at the end of the trial that there was a preponderance of evidence to support admission under Fed.R. Evid. 801(d)(2)(E). *United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977). The court so found. Its finding must be sustained unless it was clearly erroneous. *United States v. Patterson*, 644 F.2d 890, 894 (1st Cir.1981).

Language in *Petrozziello* did suggest that the defendant must be found to have been a member of the conspiracy at the time the statement was made. 548 F.2d at 23. However, this circuit has recently rejected that language as dictum, invoking instead the general rule that a conspirator is responsible for co-conspirators' acts and declarations in furtherance of the conspiracy antedating his joining the conspiracy. *United States v. Baines*, 812 F.2d 41, 42

(1st Cir.1987); *United States v. Masse,* 816 F.2d 805, 811 (1st Cir.1987). We further note that the Supreme Court now endorses this circuit's practice of giving some weight, in making the preliminary finding of conspiracy, to the co-conspirator's statement itself. *Bourjaily v. United States,* — U.S. ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987); *see Petrozziello, supra* at 23 n. 2; *United States v. Guerro,* 693 F.2d 10, 12 (1st Cir.1982). Ross' description of his partner was properly considered by the district court in reaching its conclusion that a conspiracy existed.

AFFIRMED.