USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 97-1772 UNITED STATES OF AMERICA, Appellee, v. MADELINE VALENT N-OQUENDO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____ _____________ ____________________ Linda Backiel on brief for appellant. _____________ Guillermo Gil, United States Attorney, Jose A. ______________ ________ Quiles-Espinosa, Senior Litigation Counsel, and Antonio R. _______________ ___________ Bazan, Assistant U.S. Attorney, on brief for appellee. _____ ____________________ December 12, 1997 ____________________ Per Curiam. Madeline Valent n-Oquendo was Per Curiam. ____________ convicted of three counts of dealing in semi-automatic weapons prohibited by 18 U.S.C. 922(v) and was sentenced to 51 months of incarceration. She appeals her conviction, arguing that the indictment, at Count I, merged the substantive and conspiracy offenses such that she did not have fair notice of that which she was being accused and that, therefore, double jeopardy concerns are raised by her conviction. A co-conspirator's statement was erroneously admitted and there were other trial errors, she says, and she complains that she was not given a theory of the defense instruction. Her sentence is improper, she also argues, because she should not have received a two- point upward adjustment as an organizer or supervisor and she should have been given a downward departure for extreme family hardship. Many of the claimed errors were not objected to in the trial court and Valent n's arguments fail for reasons which require only brief explanation. I Valent n worked as a manager at a weapons shop, the Armer a del Oeste in Bayam n, Puerto Rico. The federal firearms license for the shop was issued to Carmen V squez- V squez. Valent n wanted to assume the business and had a pending application to obtain her own license. The undoing -2- 2 of Valent n and her co-defendants, including Jose S nchez- Toledo, came when a package, sent though the U.S. Mails, arrived at the Bayam n Post Office with the muzzle of a rifle sticking out. It was addressed to the post office box of the Armer a del Oeste, but the return address, in Florida, was fictitious. Valent n claimed the package and turned it over to S nchez, an employee of the Puerto Rican Police, who put the package into a police car and drove to another location where he returned the package to Valent n. [S nchez would later plead guilty and provide evidence against Valent n.]  Within two weeks a second package arrived at the Bayam n Post Office from the same fictitious Florida address. This package was picked up by co-defendant Maritza Emerson- de-Jes s, who presented false identification. Emerson also worked at the Armer a. Emerson used Valent n's pick-up truck to get the package. She also turned the package over to S nchez, who again put it into his police car, in which Gonz lez-Rom n was a passenger. The postal authorities, who had been monitoring these transactions with interest, immediately arrested the two men, and later, the women.  These transactions were not recorded on the books of the Armer a. Indeed, documents appear to have been falsified in an effort to show that the transaction in the weapons was authorized. The two packages contained six Norinco rifles and two large capacity magazines, prohibited -3- 3 by law. The two women acknowledged receiving $750.00 for the transactions, but argued that they thought the weapons belonged to the Puerto Rican Police and had been sent to Miami for repair. The jury rejected that theory. II The Indictment While not artfully drafted, Count I of the Indictment alleged that the defendants did "unlawfully engage in the business of dealing in firearms as the term is defined in Title 18, United States Code, Section 921(3), that is, a conspiracy to violate Title 18, United States Code, Section 922(a)(1)." The indictment went on to allege the object of the conspiracy and a series of overt acts, giving specific places and times. Valent n never objected to the indictment before the trial court, so review is for plain error. See ___ United States v. Olano, 507 U.S. 725 (1993). There was no _____________ _____ plain error.  The combination of the references in the indictment to the statutory sections involved and the description of the overt acts gave Valent n ample notice of the charges. To the extent Valent n argues there was ambiguity as to whether the transaction was illegal because she was unlicensed or because she was licensed but nonetheless engaged in an illegal transaction, Valent n was given discovery showing that the government would show she -4- 4 did not have a valid license at the time of these transactions. There was no due process notice problem. The district court sensibly construed Count I as a conspiracy count and so instructed, without objection.  As to any hypothetical double jeopardy issue, the issue is at present exactly that: hypothetical. If there is a future prosecution, Valent n may raise the double jeopardy issue at that time. Co-Conspirator Statement and Other Alleged Trial Errors Applying this circuit's oft-recited test under United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. ______________ ____________ 1977), the district court conditionally held admissible the statement of Gonz lez-Rom n, as reported by S nchez-Toledo. The statement concerned the relationship between Valent n and Gonz lez, that they had made arrangements to send the packages from Florida to Puerto Rico and that all of those involved were aware that the packages contained weapons. At the end of the trial, the district court revisited the question and again determined the statements were admissible. Valent n argues that there was no evidence of a conspiracy other than these statements and so admission of the testimony was error. The argument is without merit, as the recitation of the evidence demonstrates. Nor was Valent n entitled to an instruction on the defense theory that these transactions were legitimate and -5- 5 the guns were intended for the Puerto Rico Police. There was no evidence to support the theory. The document proffered in support were not established to be official documents from San Juan Police; rather, they appear to have been falsified, and rather ineptly at that. We have reviewed the remaining alleged trial errors and find the arguments to be without merit. Sentencing The district court found that Valent n was a leader or organizer in the offense and accordingly increased the offense level by two points under U.S.S.G. 3B1.1(c). On the evidence, this conclusion was plainly correct. Valent n gave Gonz lez the address to which the weapons were to be shipped, twice called S nchez-Toledo to pick up the weapons, appeared herself to pick up the guns, and let Emerson use her truck when Emerson picked up the guns. As to the downward departure argument made here, no request was made to the district court for a downward departure and there is no clear error. Affirmed. ________ -6- 6