# United States Court of Appeals
## For the First Circuit

No. 07-1499

UNITED STATES OF AMERICA,

Appellee,

v.

JERRY FAMANIA-ROCHE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Lynch, Chief Judge, and
Boudin and Lipez, Circuit Judges.

Mariana E. Bauzá-Almonte, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, and Rosa Emilia Rodriguez-Velez, United States Attorney, were on brief, for appellee.
Mark L. Stevens, with whom Law Office of Mark Stevens was on brief, for appellant.

August 11, 2008

**LIPEZ, Circuit Judge**. Defendant Jerry Famania-Roche was charged, along with sixty-five others, with conspiracy to possess with intent to distribute and distribution of more than five kilograms of cocaine and one kilogram of heroin. He was convicted following a two-day jury trial and sentenced to 120 months, the applicable statutory mandatory minimum, pursuant to 21 U.S.C. § 841(b)(1)(A). He appeals, claiming that the district court plainly erred in admitting testimony to which Famania-Roche did not object at trial, and challenging the sufficiency of the evidence linking him to the conspiracy. After a thorough review of the record, we affirm the conviction.

## I.

In light of Famania-Roche's sufficiency challenge, we recite the facts in the light most favorable to the jury verdict. United States v. Colón-Díaz, 521 F.3d 29, 32 (1st Cir. 2008). The evidence introduced at trial described Famania-Roche as a seller and a weapons handler for a drug trafficking organization in Santa Isabel, Puerto Rico. The organization, run by Luis Enrique Santiago-Báez, controlled all of the drug sales in Santa Isabel beginning in about 1998. It operated nine drug points, including Rincón Taíno and Cemí, two locations near the area where Famania-Roche lived. The sale of drugs within Santa Isabel required Santiago-Báez's permission. Those who sold drugs without his permission were killed.

-2-

Each of the drug points sold an eighth of a kilogram of cocaine each week. Some of the drug points also distributed heroin, crack, and marijuana. The Rincón Taíno drug point, for example, sold an eighth of a kilogram of cocaine and heroin each week over the course of the six-year conspiracy.

At trial, Xiomi Morales-Morales, a cooperating witness for the government, testified that she had seen Famania-Roche selling cocaine at Rincón Taíno and Cemí. She operated her own drug point, known as Lala's Café, and testified that when she did not have drugs to sell she would send her customers to Famania-Roche. Her customers would report back that they had purchased cocaine from him. She stated that Famania-Roche was always armed. She also saw him at the Coco Bongo Bar, a place frequented by members of the Santiago-Báez organization. She reported that he had placed his pistol on top of the bar, as the other members of the organization did when they gathered to discuss how much money had been made at the drug points during that week.

David Morales-Rodríguez, another cooperating witness, testified that he had purchased cocaine from Famania-Roche on 15 to 20 occasions between 2002 and 2005. He also described Famania-Roche as always armed. Morales-Rodríguez, who stored drugs and weapons for the Santiago-Báez organization, recounted that one day Famania-Roche had arrived at his house and told him that he had been sent by Santiago-Báez and another member of the organization

to pick up a shotgun. Morales-Rodríguez wrapped the shotgun in a jacket and gave it to Famania-Roche.[1]

The government also introduced at trial a recorded telephone conversation in which Famania-Roche arranged to meet a confidential informant to sell him two firearms, a 9mm pistol and a .357 Magnum revolver. Although the confidential informant did not testify at trial, Special Agent Meléndez-Cruz, the DEA agent investigating the organization, testified that he had arranged for the informant to make the call and listened in as it was being recorded. He testified that the voice on the tape was that of Famania-Roche. On the recording, Famania-Roche agreed to meet with the informant to consummate the sale. Famania-Roche came to the informant's residence as planned. However, he told the informant that he could not sell him the weapons because they were being used at the time. This encounter was also recorded, but the recording was inaudible because Famania-Roche had arrived at the meeting driving a diesel cement truck.

In addition, the government called Michael Famania-Torres, the defendant's uncle and a local police officer, to

---

[1]Famania-Roche's father and brother were among those charged in the indictment as members of the Santiago-Báez organization. Part of the defense's theory at trial appears to have been that because Famania-Roche and his father were both called "Jerry," the investigators may have mistakenly included the son in the indictment. However, both Morales-Morales and Morales-Rodríguez testified that they had known the defendant since he was a child and would be unlikely to confuse him with his father.

testify.  Famania-Torres explained that he had become familiar with the Santiago-Báez organization through his work as a police officer and that he had been involved with two separate investigations related to the organization's activities.  On the basis of these investigations and general familiarity with the organization, he testified that his nephew was a seller at the drug point at Rincón Taíno and that he also transported weapons for the organization.  On cross-examination, Famania-Torres admitted that he had never seen his nephew sell drugs or transport weapons and that he had never arrested him.

Famania-Roche's counsel did not object to any of the testimony described above.  At the close of the government's case, Famania-Roche moved for a judgment of acquittal, arguing that the government had failed to introduce evidence directly linking him to the conspiracy.  See Fed. R. Crim. P. 29.  The district court denied the motion.

Famania-Roche then testified in his own defense and denied any involvement with the Santiago-Báez organization.  He denied ever selling drugs or weapons and denied that it was his voice on the recording.  He also called his father, an indicted coconspirator who had pled guilty to the conspiracy, to testify on his behalf.  His father stated that he had no knowledge of his son being a member of the Santiago-Báez organization or engaging in any

criminal activity. Famania-Roche then renewed his Rule 29 motion and the district court again denied it.

Following the jury's guilty verdict, Famania-Roche filed a final, written Rule 29 motion. The district court denied this motion during Famania-Roche's sentencing hearing, after hearing from both sides.

At sentencing, the district court found that Famania-Roche's guideline range was 78 to 97 months. However, this range was trumped by the statutory minimum of ten years in prison, 21 U.S.C. § 841(b)(1)(A), which was applicable because the jury had specifically found, by means of a special verdict form, that Famania-Roche was responsible for more than five kilograms of cocaine and more than five kilograms of heroin.[2] Accordingly, the district court sentenced Famania-Roche to 120 months in prison.[3] This appeal followed.

---

[2]At the sentencing hearing, the court treated the five-kilogram quantity for heroin as a mistake. The court had intended to ask the jury whether Famania-Roche was responsible for more than one kilogram of heroin. The larger quantity appeared on the form as a result of a typographic error. The district court decided to give the defendant the "benefit of the doubt" by construing the jury's response as a finding that he was responsible for only one kilogram of heroin rather than five.

[3]The district court noted at sentencing that Famania-Roche had initially pleaded guilty pursuant to a plea agreement under which he would have received a 60-month sentence. However, because Famania-Roche had recanted that plea and been convicted by a jury, he was now subject to the 120-month mandatory minimum sentence.

Famania-Roche argues that the district court plainly erred in admitting certain testimony from Xiomi Morales-Morales and Famania-Torres. We review properly preserved objections to the admission of evidence for abuse of discretion. United States v. Rodriguez, 525 F.3d 85, 95 (1st Cir. 2008). However, where, as here, "the appellant did not assert a timely objection at trial, we review only for plain error." Id. This standard requires the appellant to show that there was error, that the error was plain, and that it prejudiced the defendant. Id. The appellant may demonstrate prejudice by showing a reasonable probability that "the error 'affected the outcome of the district court proceedings.'" Id. (quoting United States v. Epstein, 426 F.3d 431, 437 (1st Cir. 2005)); see also United States v. Dominguez Benitez, 542 U.S. 74, 81-82 (2004). When these three requirements are met, we may exercise our discretion to correct the error only if it "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting Epstein, 426 F.3d at 437); see also United States v. Olano, 507 U.S. 725, 736 (1993).

## A. Xiomi Morales-Morales's Testimony

Famania-Roche challenges as hearsay the admission of Morales-Morales's testimony that her customers had confirmed that they had purchased cocaine from Famania-Roche when she did not have any available. The challenged exchange was as follows:

Government: Let's take it one by one. Rincón Taíno, what did Mr. Jerry Famania sell in Rincón Taíno?

Morales-Morales: He sold cocaine. Well, I know for a fact because when I didn't have material I would send my customers to him to buy from him and they would say to me that he was the one that had sold them the drugs that day.

Government: Okay. Now, let's talk about Cemí, what did Jerry Famania sell in Cemí?

Morales-Morales: Cocaine. Also told to me by my customers.

Government: Okay. By your customers, you mean people who bought cocaine from you; is that correct?

Morales-Morales: Exactly. Yes, when I didn't have any I would send my customers to their drug points.

Federal Rule of Evidence 801(d)(2)(E) provides that "statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy" are not hearsay. The predicate for admitting testimony under this rule is a conclusion by the trial court that "it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). This determination is referred to in our circuit as a Petrozziello ruling. United States v. Newton, 326 F.3d 253, 257 (1st Cir. 2003). When a timely objection is made, the trial court makes a provisional Petrozziello ruling, subject to a final

ruling as to whether the coconspirator requirement is satisfied at the close of all the evidence. Id. Whether Morales-Morales's customers were members of the Santiago-Báez conspiracy, along with Famania-Roche, is a question of fact. United States v. Hurley, 63 F.3d 1, 11 (1st Cir. 1995) ("Whether a conspiracy's customers are also members of the conspiracy is a fact-based question . . . .").

Because Famania-Roche did not object to the testimony at trial, the district court did not make a Petrozziello ruling and did not make a factual finding as to whether the customers were coconspirators. When Famania-Roche first raised hearsay concerns in his Rule 29 motion, the district court responded:

> The problem is that rulings that I made are in the context of the objections that are presented. . . . There was no issue ever raised as to the preliminary rulings that must be made in those cases, nothing of that sort. But even if I had made preliminary rulings, I would have said now that the evidence allowed me to do the conditional – to change the conditional admission to an actual admission.

As the district court aptly noted, Famania-Roche's failure to object at trial explains the inadequacy of the record. There is no evidence of who the customers were, how often they purchased drugs, and for what purpose those purchases were made. Without this information, we cannot determine whether Morales-Morales's customers were coconspirators.

In any event, Famania-Roche has failed to meet any of the prongs of the plain error test. Aside from the conclusory assertion

that Morales-Morales's customers were not part of the conspiracy, Famania-Roche does not muster any evidence, or even argue, that the predicate for admitting the testimony was not satisfied here. He also does not explain how the admission of this testimony prejudiced him. Morales-Morales testified that she had seen him selling drugs at both Rincón Taíno and Cemí and that she would send her customers to him when she did not have cocaine available. There is no hearsay involved in this testimony. The confirmation offered by her customers that they had successfully purchased cocaine from him adds little to this account. Accordingly, we conclude that the district court did not plainly err in admitting Morales-Morales's testimony.

Famania-Roche also challenges the admission of Morales-Morales's testimony that Famania-Roche controlled the Cemí drug point and her description of the quantities of drugs sold at the various drug points on a weekly basis.[4] He claims that this testimony lacked a foundation in personal knowledge. See Fed. R. Evid. 602. We perceive no such weakness in the testimony. Morales-Morales operated her own drug point and explained that she was present at the Coco Bongo Bar where members of the conspiracy regularly gathered to discuss the quantities of drugs they had sold at the various drug points. She also testified that she had

_____

[4]Both Morales-Morales and Special Agent Meléndez-Cruz testified that each of the drug points sold an eighth of a kilogram of cocaine per week. They also testified that the Rincón Taíno drug point sold an eighth of a kilogram of heroin each week.

personally seen Famania-Roche selling drugs and sent her customers to him. No more foundation was required to show that her testimony was based on personal knowledge of the inner-workings of the conspiracy of which she was a member.[5]

## B. Famania-Torres's Testimony

Famania-Roche also challenges the admission of testimony by his uncle, Michael Famania-Torres, a local police officer. Famania-Torres testified that he had been involved in investigating the Santiago-Báez organization. The following colloquy then occurred:

> Government: Sir, as part of your investigation, knowledge and per your intervention and investigation, do you know if Mr. Jerry Famania was involved in this gang?
>
> Famania-Torres: Correct.
>
> Government: In what capacity?
>
> Famania-Torres: He operated the drug point at the Rincon Taino housing project at the midpoint as a seller.
>
> Government: And what else, if you know?
>
> Famania-Torres: With trafficking and transportation of weapons at different points.
>
> Government: Are you related in some form with Mr. Famania?

---

[5]Famania-Roche attempts to characterize Morales-Morales as a non-member of the conspiracy, citing the fact that she did not pay rent to Santiago-Báez. She was apparently permitted to run her drug point rent-free out of respect for her father. Nonetheless, she testified that Lala's Café, the drug point she owned and operated, was part of the Santiago-Báez organization.

Famania-Torres: Yes.

Government: What is the relation?

Famania-Torres: He is my nephew.

On cross-examination, Famania-Torres admitted that he had never arrested his nephew and had never seen him transporting weapons or selling drugs.

On appeal, Famania-Roche characterizes the evidentiary flaw in his uncle's testimony by stating that it "lacked any probative value, R. Evid. 401, yet presented the danger of unfair prejudice." It is difficult to know what his argument is. Taking a generous view, the appellant may be arguing that his uncle's testimony about his nephew's involvement in the conspiracy had no probative value because, in the absence of any personal knowledge of his nephew's involvement, there was no foundation for his testimony.

The government's brief on appeal did not understand this to be the argument. Even if that is the argument Famania-Roche is making, the record is unclear whether or not Famania-Torres had personally observed his nephew's conduct in relation to the conspiracy,. It may be that his testimony was based entirely on statements that he had heard from others during the course of his investigation. We have no idea whether the informants who testified at trial, or informants who did not testify, or other investigators may have passed along the information regarding Famania-Roche's

-12-

role. Thus we have no way to determine whether, for example, the information may be admissible under Federal Rule of Evidence 801(d)(2)(E) as coconspirator statements. It would have been preferable for the government to have laid a proper non-hearsay foundation. Cf. United States v. García-Morales, 382 F.3d 12, 17 (1st Cir. 2004) ("Hearsay does not become admissible merely because it is provided by a government agent in the form of an overview of the evidence."). There is a risk here that this was improper testimony for some of the same reasons we have condemned the use of improper overview testimony. See Rodriquez, 525 F.3d at 95 (collecting cases).

Nonetheless, Famania-Roche did not object to the testimony at trial and, thus, he must demonstrate plain error. He cannot meet the prejudice prong of the plain error test. Famania-Torres's testimony was entirely cumulative of the testimony of the government's other three witnesses. See United States v. De La Cruz, 514 F.3d 121, 132 (1st Cir. 2008) ("[I]t is difficult to imagine how the district court's failure to strike what, in essence, amounted to cumulative testimony could have prejudiced Defendant."). The uncle's testimony offered no additional specificity or detail. Given the strength of the government's case, which we further discuss in our sufficiency analysis below, and the limited impact of Famania-Torres's generalized statements, we are convinced that

the verdict was not affected by any error in admitting this testimony.  See Rodriquez, 525 F.3d at 97.

### III.

We review Famania-Roche's challenge to the sufficiency of the evidence de novo.  United States v. Boulerice, 325 F.3d 75, 79 (1st Cir. 2003).  In conducting our analysis, we consider "the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, [determine whether] a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994).

To prove a conspiracy to distribute drugs, the government was required to show that a conspiracy existed, that the defendant had knowledge of it, and that the defendant participated voluntarily in it.  United States v. Llinas, 373 F.3d 26, 30 (1st Cir. 2004).

> More specifically, to establish that a defendant belonged to and participated in a conspiracy, the government must prove two kinds of intent: intent to agree [with her co-conspirators] and intent to commit the substantive offense.  Such proof may consist of circumstantial evidence, including inferences from surrounding circumstances, such as acts committed by the defendant that furthered the conspiracy's purposes.  The government need not prove that a co-conspirator knew all of the details or participated in all of the objectives of the plan.

Id. (quoting United States v. Gomez-Pabon, 911 F.2d 847, 853 (1st Cir. 1990)); see also United States v. Boylan, 898 F.2d 230, 241-42

-14-

(1st Cir. 1990) ("The conspiratorial agreement need not be express so long as its existence can plausibly be inferred from the defendants' words and actions and the interdependence of activities and persons involved.").

Relying on our decision in United States v. DeLutis, 722 F.2d 902, 906-07 (1st Cir. 1983), where we stated that "a single sale of drugs without more does not establish a conspiracy," Famania-Roche argues that the evidence in this case "proves no more than mere simple sale of drugs."  We disagree.

This clearly is not a case involving a single sale of drugs by the defendant.  Moreover, it is not a case where the evidence shows only a buyer-seller relationship between Morales-Rodríguez and Famania-Roche, where the latter was some kind of independent operator.  Morales-Rodríguez testified that he had purchased drugs on many occasions from Famania-Roche at the Rincón Taíno drug point.  The testimony at trial further established that Santiago-Báez controlled drug sales in the town, and at Rincón Taíno in particular, and that without his permission, those who sold drugs within the town would be killed.  Morales-Morales testified that Rincón Taíno and Cemí, where she had seen Famania-Roche selling drugs, were drug points within the Santiago-Báez organization.  She explained that she sent her customers to buy from Famania-Roche when she did not have cocaine available.  She also described Famania-Roche placing his gun on the bar at the Coco Bongo, as was customary

-15-

for members of the drug organization.  This evidence is sufficient to establish Famania-Roche's role as a drug seller within the conspiracy.

There was also ample evidence of Famania-Roche's role as a weapons handler for the Santiago-Báez organization.  Morales-Rodríguez stated that Famania-Roche had once picked up a shotgun, on orders of Santiago-Báez and another leader of the conspiracy, from Morales-Rodríguez's house, where the weapon had been stored by the organization.  Agent Meléndez-Cruz also testified regarding Famania-Roche's agreement to sell firearms to a confidential informant.  Although this sale was never consummated, the jury could have inferred from Famania-Roche's explanation that the guns were in use by others and that his inability to deliver the weapons on the agreed upon date resulted from the needs of other members of the conspiracy at the time.

Given this testimony regarding Famania-Roche's involvement with both drugs and weapons, we are satisfied that the government introduced ample evidence from which the jury could reasonably conclude beyond a reasonable doubt that Famania-Roche was a voluntary participant in the Santiago-Báez organization. Accordingly, we affirm the conviction.

**So ordered**.