# United States Court of Appeals
## For the First Circuit

No. 09-1260

UNITED STATES OF AMERICA,

Appellee,

v.

MARCUS MITCHELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

James H. Budreau, on brief for appellant.
Theodore B. Heinrich, Assistant United States Attorney, and Michael K. Loucks, Acting United States Attorney, on brief for appellee.

February 22, 2010

---

[*]  The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** Defendant-appellant Marcus Mitchell was convicted after a jury trial for conspiring to distribute cocaine. He now appeals his conviction on two grounds. First, he contends that the district court improperly admitted out-of-court co-conspirator statements despite insufficient evidence to corroborate Mitchell's participation in the conspiracy. See United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977). Second, he contends that the district court erred by failing to give a "buyer-seller" instruction sua sponte, which would have asked the jury to consider whether Mitchell's relationship with the conspiracy was that of an active member or merely a purchaser of narcotics for personal use. We conclude that the government offered more than sufficient extrinsic evidence to support the admission of the co-conspirator statements and that the need for a buyer-seller instruction was not supported by the record. We affirm.

## I. Background[1]

### A. The Conspiracy

From January to October 2004, Manuel Pinales ran a wholesale drug operation that supplied large quantities of cocaine to customers in the Boston area. Luis Clas, José Rodríguez, and Richard Pena were also major players. Their customers typically purchased kilograms of cocaine at a time, often on consignment, for

---

[1] "We review the facts of a criminal case on appeal from a conviction in the light most favorable to the verdict." United States v. Candelaria-Silva, 162 F.3d 698, 700 (1st Cir. 1998).

-2-

approximately $24,000 per kilogram. One of their customers, who purchased wholesale quantities of cocaine, was known variously as "Prieto"[2] or "Marko."[3]

In January 2004, Clas asked Rodríguez to take over the organization's distribution activities while he was away in the Dominican Republic. Before he left, Clas introduced Rodríguez to many of the organization's customers, one of whom was "Prieto." At this initial meeting, Rodríguez sold "Prieto" and another man a kilogram of cocaine. While Clas was away, Rodríguez was the principal contact for Clas's customers.

From January through October 2004, Rodríguez delivered, on five occasions, large quantities of cocaine to "Prieto," totaling approximately fifteen kilograms. "Prieto" generally purchased one or two kilograms at a time, although he purchased three kilograms on one occasion and five on another. "Prieto" often purchased on consignment and, at one point, was in debt to Rodríguez to the tune of $120,000.

**B. The Wiretap Investigation**

From July through October 2004, the Drug Enforcement Administration (DEA), which had been investigating Pinales's role in the conspiracy, began a wiretap investigation on phones

---

[2]  The Spanish term "Prieto" translates to "the dark one." Mitchell is African-American.

[3]  As we have mentioned, Mitchell's first name is Marcus; "Marko" is a Spanish equivalent.

belonging to Pinales, Pena, Rodríguez, and Clas. Over eight hundred phone calls were intercepted. Twenty-six are relevant to this appeal.

There were thirteen calls involving other buyers, not Mitchell. All of these calls were in code and involved conspiracy members other than Mitchell discussing the purchase and sale of drugs. Drugs were referred to as concert tickets, vehicles, or car parts. For instance, during one recorded call, Clas arranged to meet a customer to exchange "twenty three" for "a tire." Subsequent surveillance of Clas showed him distributing a kilogram of cocaine to that customer.

Seven calls (the "Mitchell calls") were made to, or originated from, Mitchell's listed number. In these calls, Mitchell spoke directly to Clas or Rodríguez in code about drugs and drug proceeds. For instance, in one conversation, Rodríguez said to Mitchell, "my boy told me about something but it wasn't um . . . In the price range, what I was looking for . . . he set it high . . . if worst comes to worst, I'll just, you know, I'll just tell him to . . . give me that car . . . so I can um . . . I can have stuff to . . . transportation." In another exchange, Clas asked Mitchell, "[C]an I see you tomorrow please." Mitchell replied, "[I]t's kind of early, man," but agreed to see him. At trial, these calls were offered as admissions of the defendant.

Mitchell did not object to their admission, nor does he challenge them on appeal.

Six calls (the "Prieto calls") involved conversations among conspiracy members in which they discussed "Prieto." Two of the Mitchell calls overlapped with the Prieto calls and provided strong circumstantial evidence that Mitchell was "Prieto." For example, during one recording, Mitchell called Rodríguez at 9:57 a.m. looking to speak to Clas. At 9:58 a.m., Rodríguez called Pinales and asked him to tell Clas to call "Prieto." Pinales said that he would. At 9:59 a.m., Clas called Mitchell. The remaining calls demonstrated "Prieto's" role in the conspiracy. For example, during one exchange, Rodríguez told Pinales that he was going to collect a debt from "Prieto." The next day, he told Pinales that "Prieto" only brought "nineteen pesos," short of the full payment amount. In another call, Rodríguez asked Pinales if he could give "Prieto" five "tickets" in advance since "Prieto" could only afford three. The Prieto calls were offered at trial as co-conspirator statements, which Mitchell now challenges in this appeal.[4]

### C. The Jig is Up

In October 2004, government agents seized fifty-three kilograms of cocaine from Clas's residence along with drug ledgers from Pinales's store. The ledgers showed numerous entries for

---

[4] The government does not dispute that the challenged statements were being offered for the truth of the matters asserted. We assume that they were.

"Marko"/"Prieto," revealing that he generally received three to five kilograms at a time, often delivered on consignment, and that he owed up to $ 120,000 in the summer of 2004.  Around this time, Rodríguez began to cooperate with the government pursuant to a plea agreement.

On February 23, 2005, government agents showed Rodríguez an array of several photographs and asked him to identify anyone that he knew. Rodríguez pointed to a photo of Mitchell and said, "That's Prieto," although he did not know Mitchell's actual name. Later, Mitchell was arrested and, in July 2005, indicted by a grand jury.  He was charged, along with thirteen co-defendants, with conspiracy to possess with intent to distribute, and distribution of, more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

At Mitchell's jury trial, Rodríguez testified, among other things, that Pinales, Pena, Clas, and Rodríguez only referred to one customer as "Prieto"/"Marko."  Rodríguez identified that person as Mitchell.  The government also introduced the wiretapped calls, including the Prieto calls now challenged on appeal. Mitchell made a timely objection to the admission of the Prieto calls under Petrozziello, 548 F.2d 20, asserting that there was insufficient evidence, independent of the co-conspirator statements themselves, to establish that he was "Prieto" and therefore a

member of the conspiracy.[5]  The district court disagreed and admitted the statements.  Mitchell was convicted after a four-day trial and now appeals.

## II. Discussion

### A. Admission of Co-conspirator Statements

Mitchell's heartland claim on appeal is that he was convicted on the basis of out-of-court statements that were improperly admitted under the co-conspirator exception to the hearsay rule.  See Fed. R. Evid. 801(d)(2)(E).  He challenges the admission of those statements, and asks us to vacate his conviction and remand for a new trial.[6]

Federal Rule of Evidence 801(d)(2)(E) permits the admission of statements made "by a co-conspirator of a party during the course and in furtherance of the conspiracy."  See, e.g., United States v. Portela, 167 F.3d 687, 702 (1st Cir. 1999).  To introduce statements under this co-conspirator exception, "[t]he proponent of the statement bears the burden of establishing, by a

---

[5]  Under Petrozziello, the party against whom a statement is being offered must object to its admission at the time it is offered, and, if the statement is admitted, renew the objection at the close of all the evidence.  United States v. Sepúlveda, 15 F.3d 1161, 1180 (1st Cir. 1993)(citations omitted).  The court will then make its final Petrozziello determination "out of the hearing of the jury."  United States v. Portela, 167 F.3d 687, 703 (1st Cir. 1999) (citing United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980)).

[6]  Mitchell limits his appeal to whether sufficient evidence was presented to establish his participation in the conspiracy.  He does not contest the existence of a conspiracy to distribute drugs.

-7-

preponderance of the evidence, 'that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy.'" United States v. Bradshaw, 281 F.3d 278, 283 (1st Cir. 2002)(quoting Sepúlveda, 15 F.3d at 1180); see Fed. R. Evid. 801(d)(2)(E). A court's determination as to whether this burden has been met is known in this circuit as a Petrozziello ruling. See United States v. Famania-Roche, 537 F.3d 71, 75 (1st Cir. 2008)(citing United States v. Newton, 326 F.3d 253, 257 (1st Cir. 2003)).

"[A] co-conspirator's statement, standing alone, is insufficient to meet the preponderance standard of Rule 801(d)(2)(E)." Sepúlveda, 15 F.3d at 1182. The proponent of the statement must introduce some "extrinsic evidence . . . sufficient to delineate the conspiracy and corroborate the declarant's and the defendant's roles in it." United States v. Piper, 298 F.3d 47, 52 (1st Cir. 2002). Thus, "[w]hile a trial court may consider the contents of the statement at issue as evidence of the elements of a Petrozziello determination, the determination must rest at least in part on corroborating evidence beyond that contained in the statements at issue." Portela, 167 F.3d at 703. We will uphold the trial court's admission of co-conspirator statements unless it was clearly erroneous. United States v. Thompson, 449 F.3d 267, 273 (1st Cir. 2006).

-8-

Mitchell's principal contention is that the admission of the co-conspirator statements was in error because the "uncorroborated" testimony of Rodríguez laid an insufficient evidentiary foundation to support the conclusion that Mitchell was, more likely than not, "Prieto," a member of the conspiracy. This argument is a nonstarter. The testimony of Rodríguez, a cooperating witness, was extrinsic evidence that was probative of the existence of the conspiracy to distribute cocaine and Mitchell's membership in that conspiracy. At trial, Rodríguez identified Mitchell as "Prieto," one of his co-conspirators. See, e.g., Portela, 167 F.3d at 703, 704 (co-conspirator's in-court identification of defendant as conspiracy member supports admission of co-conspirator statements). Rodríguez testified that Mitchell regularly purchased, on consignment, multi-kilogram quantities of cocaine from conspiracy members for tens of thousands of dollars at a time. See, e.g., United States v. Moran, 984 F.2d 1299, 1303 (1st Cir. 1993) (pattern of drug sales between individuals for redistribution supports conclusion that individuals were involved in drug conspiracy). We have never held that the testimony of a cooperating witness cannot be used to satisfy the government's burden under Petrozziello. Indeed, our cases are to the contrary. See Piper, 298 F.3d at 52 (testimony of cooperating co-conspirator

supports admission of statements under Rule 801(d)(2)(E)); accord Portela, 167 F.3d at 703-04.[7]

In any event, the government offered substantial evidence, in addition to Rodríguez's testimony, to establish that Mitchell was an active conspiracy member. The government offered recordings of phone calls, which came into evidence as the defendant's own admissions, in which Mitchell discussed drug-related matters in code with other conspiracy members. See United States v. Morales-Madera, 352 F.3d 1, 12-13 (1st Cir. 2003) (defendant's use of drug code probative of membership in conspiracy). Phone records showed calls from Mitchell's listed phone number to Clas and Rodríguez, and, as discussed, call patterns and conversations among co-conspirators provided strong circumstantial proof that Mitchell was indeed "Prieto."[8] See United States v. Campbell, 268 F.3d 1, 6 n.4 (1st Cir. 2001)(phone records and call patterns probative of conspiracy membership); see

---

[7] A defendant's conviction for participation in a narcotics distribution conspiracy may be upheld under a reasonable doubt standard on the basis of the "uncorroborated" testimony of a cooperating witness alone. See United States v. Gómez-Pabón, 911 F.2d 847, 853 (1st Cir. 1990) (rejecting defendant's argument that cooperating witness's testimony was insufficient to establish participation in conspiracy); see also United States v. Martínez-Medina, 279 F.3d 105, 115 (1st Cir. 2002) (quoting United States v. Andújar, 49 F.3d 16, 21 (1st Cir. 1995)) (same). Plainly, then, the testimony of a cooperating witness may be used to satisfy the lower evidentiary burden required by Petrozziello. 548 F.2d at 22, 23.

[8] Mitchell does not dispute that Clas and Rodríguez were members of a conspiracy to distribute cocaine.

-10-

also Portela, 167 F.3d at 703 (phone records may corroborate participation in conspiracy for purposes of Rule 801(d)(2)(E)).

The government also put into evidence a phone book seized from Clas's apartment containing Mitchell's phone number with "El Negro" written beside it.[9]  See Portela, 167 F.3d at 703 (co-conspirator phone book containing defendant's phone number probative of conspiracy involvement).  Drug records seized from Clas's residence and presented at trial showed that "Prieto"/"Marko" made multiple purchases of multi-kilogram quantities of cocaine from the conspiracy on consignment.  See United States v. Tejada, 886 F.2d 483, 487 (1st Cir. 1989)(drug ledger, containing nicknames of defendant and other conspiracy members, is direct evidence of membership in conspiracy); see also Martínez-Medina, 279 F.3d at 127 (drug ledgers may corroborate defendant's participation in drug conspiracy).

We need not gild this lily any further.  The government introduced more than sufficient extrinsic evidence to establish that Mitchell was, more likely than not, a member of the charged conspiracy to distribute cocaine, and that the challenged statements were in furtherance of the conspiracy's objectives.  The district court properly admitted the statements under Rule 801(d)(2)(E).

---

[9]  "El Negro" and "Prieto," when translated, both roughly mean "the dark one."

## B. Buyer-Seller Instruction

Next, Mitchell argues that, though he himself did not request one, the district court should have given a buyer-seller instruction sua sponte because the evidence presented at trial supported the theory that he was a mere buyer and not a co-conspirator. See Moran, 984 F.2d at 1302. A buyer-seller instruction is appropriate only if the record, when viewed in the light most favorable to the defendant's theory of the case, reasonably supports the conclusion that the defendant was a mere purchaser of drugs for personal use and not an active participant in the conspiracy. See United States v. Rodríguez, 858 F.2d 809, 812 (1st Cir. 1988). A "classic" buyer-seller relationship is a single sale, for personal use, without prearrangement. Moran, 984 F.2d at 1304; United States v. Innamorati, 996 F.2d 456, 484 (1st Cir. 1993)(buyer-seller instruction restricted to cases "in which the evidence showed only a single or a very limited number of sales for personal use").

We review the district court's failure to issue the instruction sua sponte for plain error, United States v. Varoudakis, 233 F.3d 113, 125 n.12 (1st Cir. 2000), bearing in mind that "the plain error exception is cold comfort to most defendants pursuing claims of instructional error." United States v. Gómez, 255 F.3d 31, 37 (1st Cir. 2001). To succeed, the defendant must show "(1) that an error occurred, (2) which was clear or obvious

-12-

and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

We hold that the district court did not plainly err in failing to give a buyer-seller instruction because the record does not support the theory that Mitchell was a mere buyer for personal use. At the outset, Mitchell never argued to the jury that he was a mere buyer; his principal defense was that he was not "Prieto." See United States v. Askew, 403 F.3d 496, 504 (7th Cir. 2005) (defendant's "choice not to adopt a buyer-seller defense cuts in favor of finding no error in the district judge's decision not to give the instruction"); see also United States v. Johnson, 437 F.3d 665, 677 (7th Cir. 2006)(similar).

In any event, the evidence at trial showed that Mitchell was involved in multiple transactions, for large, kilogram-quantities of cocaine, for large sums of money. See Martínez-Medina, 279 F.3d at 120 (no buyer-seller relationship where defendant made repeated purchases of large quantities of drugs for resale); see also United States v. Gómes, 376 F.3d 42, 45 (1st Cir. 2004)(even one sale between two parties can prove existence of conspiracy when coupled with supporting contextual details). The evidence established that he often received drugs on consignment. United States v. Humphrey, 287 F.3d 422, 435 (6th Cir. 2002)

-13-

(delayed credit plan evidences trust and supports a conspiracy link between parties).  He also made pre-arranged purchases from other conspiracy members.  <u>United States</u> v. <u>Hawkins</u>, 547 F.3d 66, 72 (2d Cir. 2008)(pre-arrangement to deal in wholesale quantities of drugs creates presumption of knowing conspiracy involvement).  Moreover, he was familiar with the conspiracy's drug code.  <u>Morales-Madera</u>, 352 F.3d at 12-13 (defendant's use of drug code probative of his role in conspiracy).  Under these circumstances, a buyer-seller instruction was not called for.  There was no error -- let alone plain error -- when the district court did not so instruct the jury.

<u>        **Affirmed**</u>.