# United States Court of Appeals
## For the First Circuit

———————————

No. 13-1352

UNITED STATES OF AMERICA,

Appellee,

v.

ROLANDO A. ROJAS,

Defendant, Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

———————————

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

———————————

Alan Jay Black for appellant.
Donald C. Lockhart, Assistant United States Attorney,
with whom Peter F. Neronha, United States Attorney, was on brief,
for appellee.

———————————

July 7, 2014

———————————

**KAYATTA, Circuit Judge**. Rolando Rojas appeals from his conviction for distributing cocaine, pointing to two instances of prosecutorial misconduct during closing arguments: improper vouching and the playing of an audio recording never entered into evidence. Because the district judge ably responded to both of the prosecutor's errors, and neither of the errors affected Rojas's conviction, we affirm.

## I. Background

Rolando Rojas was indicted for distributing cocaine on three occasions in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(B)(iii). His buyer was an undercover agent, Wing Chau, who made audio and video recordings of their meetings and also recorded many of their phone calls.

At trial, Chau testified that the first sale took place in January 2011, following two recorded phone calls between him and Rojas. According to the transcript of the first call, Chau said to Rojas, "I want to pick up that OZ from you," and Rojas responded, "yeah, I'm going to be around." Chau then asked, "[y]ou cooked the good one for me?" Rojas against responded, "[y]eah." In the second call, Chau told Rojas he would be at their meeting place in five minutes, and Rojas responded, "It's going to be a G . . . but it's gonna be rock, rock, rock. It's going to be good man."

The prosecution presented a video showing their meeting, and a separate audio recording, which together seem to depict Rojas

agreeing to accept cartons of cigarettes as payment for cocaine, though the actual cocaine cannot be seen due to the position of the camera. Chau testified that after the purchase he gave the substance he received to a detective, who himself testified that he performed a preliminary test confirming that it was cocaine, a result further confirmed by a full chemical test, according to another witness.

In several phone calls later in January, Chau and Rojas discussed the previous sale and possible future sales, with Chau expressing his interest in more cocaine (e.g., "I still need the hard stuff") and Rojas agreeing that he would try to procure it (e.g., "let me see what I can do"). The second sale, Chau testified, took place in February 2011. On the phone the day before, Chau asked if Rojas had "that material," and Rojas said that he would "get it and then make it" by the following afternoon. The prosecution presented a video of their meeting, with audio, which shows Rojas producing a bag carrying a white substance while saying, "[t]his . . . is bomb man." As with the first sale, the substance tested positive for cocaine.

Rojas allegedly sold cocaine to Chau for the third and final time in March 2011. In a phone call a few days before, Chau said, "I need . . . 120 grams," and Rojas responded, "I'm going to try to give it to you." In later calls, Chau and Rojas negotiated the price and worked out the logistics of their meeting. The

prosecution again presented a video of their meeting, with audio, in which Rojas again accepts payment in cigarette cartons and seems to refer to the cocaine he is selling ("[t]his is bomb"), but the cocaine itself is out of view, as in the first sale. The substance received by Chau tested positive for cocaine.

When Rojas was arrested in July 2011, he was interviewed by Christian Jardin, who also testified at trial. According to Jardin, Rojas confessed to all three sales.

Rojas's defense focused on three arguments. First, Rojas questioned Chau's credibility. Rojas's counsel observed in closing argument that Chau's work as an undercover agent involved "fool[ing] people about who he is and what he's doing." Second, Rojas pointed to gaps in the audio and video recordings: there was no recording for Rojas's confession, nor for some of the calls between Chau and Rojas, and the video of the first sale did not show cocaine changing hands. Third, regarding the substances that Rojas allegedly sold to Chau, Rojas alleged irregularities in the chain of custody and noted that Chau's car was not searched before the sales, meaning Chau could have brought the drugs with him. The arguments regarding the recordings and the substance received by Chau were interweaved with the attack on Chau's credibility. For example, defense counsel argued in closing that a detective should have searched Chau's car because "on some occasions police officers

-4-

lie," including officers in the local police department Chau worked with.

In closing arguments, and notwithstanding the strong hand of proper evidence he possessed, the prosecutor committed two errors.[1] First, the prosecutor played an audio recording for the jury that had not been entered into evidence. In the recording, taken during a call between Chau and Rojas preceding the March sale, Rojas explained that he was having difficulty obtaining "that shit" (presumably, the cocaine Chau had requested) but would have it soon. Defense counsel did not object at the time the tape was played but moved for a mistrial in a chambers conference following closing arguments. The judge denied the motion but instructed the jury, as soon as it reconvened, to disregard the unadmitted tape.

The prosecutor's second error occurred in his rebuttal, when he offered an overzealous and inappropriate response to defense counsel's arguments regarding the credibility of the government's witnesses. Defense counsel objected, the judge sustained the objection, and defense counsel asked for no further relief. We reproduce here the full exchange between the court and counsel:

THE COURT: Mr. Rose, any rebuttal argument?

---

[1] Appellate counsel for the United States was not the prosecutor at trial.

MR. ROSE: Yes, sir. Thank you. And I'm going to try to get not too excited. I'll give Mr. Thompson [defense counsel] credit. At least he had the nerve to call Special Agent Jardin a liar to his face. He waited until Special Agent Chau left. Ladies and Gentlemen, if you have any issues with the way this investigation was run, blame me. I'm in charge. I'm responsible.

MR. THOMPSON: Objection, Your Honor.

THE COURT: Sustained.

MR. ROSE: And when you're done blaming me --

MR. THOMPSON: Objection, Your Honor.

MR. ROSE: -- let's go back to the evidence.

THE COURT: Mr. Rose.

MR. ROSE: Pardon me, Your Honor.

THE COURT: Thank you. The objection was sustained.

MR. ROSE: Thank you, Your Honor. And I apologize to the Court. That did not come out the way I wanted it to. Lawyers' opinions don't matter, they really don't. All that matters is the evidence, okay?

## II. Analysis

The government has admitted that the prosecutor's statement in rebuttal constituted misconduct and that the tape was erroneously played. We start with the more serious error, the comments during rebuttal, then turn to the tape.

### A. The Inappropriate Statements in Rebuttal

There is no question that the prosecutor in this case improperly used his own personal credibility, and therefore that of

the government, to vouch for the prosecution's investigation and witnesses.  See, e.g., United States v. Auch, 187 F.3d 125, 131 (1st Cir. 1999).  This case marks at least the third time in the past three years that we have noted in a published opinion improper vouching by a prosecutor.  See United States v. Rodríguez-Adorno, 695 F.3d 32, 41 (1st Cir. 2012); United States v. Gomes, 642 F.3d 43, 46-47 (1st Cir. 2011).  In this instance, the prosecutor in effect testified that he ran the investigation, and that any flaws in it were therefore not probative on the question of the witnesses' credibility.  In other words, he employed his own standing and credibility to buttress the one part of his case upon which the defense focused its attack.  Quite simply, the experienced prosecutor likely knew better, as his apology and partially-corrective retraction implied.[2]

Nevertheless, the prosecutor's error caused no harm justifying setting aside the verdict.  As the transcript reflects, the district judge sustained an objection to the statements, and Rojas requested no additional relief.  Even on appeal, Rojas fails to describe specifically what the judge should have done differently.  Rojas does not argue, for example, that the judge should have declared a mistrial based on the statements.  Perhaps the judge should have instructed the jury to disregard the

---

[2]  He did not retract the actual thrust of the improper remarks, i.e., the suggestion that he, not the witnesses, was responsible for any flaws in the investigation.

statements, although Rojas asked for no such instruction. The judge did offer the following general instructions prior to deliberations, the first of which was also given at the beginning of trial:

- "The evidence that is properly before you does not . . . include comments or statements or arguments by attorneys."
- "[T]he mere fact that this case is brought in the name of the United States of America does not entitle the prosecution to any greater consideration than that which is accorded to Mr. Rojas."

We have held that instructions of this kind can help eliminate any prejudice arising from improper vouching. See United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir. 1987).

Rojas does say vaguely that the judge should have, as a result of both of the prosecutorial errors at issue on this appeal, given a "stern rebuke" and applied "repressive measures," quoting Berger v. United States, 295 U.S. 78, 85 (1935). But Berger can be easily distinguished based on the more frequent and severe prosecutorial misconduct there, including "misstating the facts in his cross-examination of witnesses," "pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis," "assuming prejudicial facts not in evidence," "bullying and arguing with witnesses," and generally "conducting himself in a thoroughly indecorous and improper manner." Id. at 84. The less egregious misconduct here,

-8-

while warranting a rebuke, did not mandate that one be given sua sponte.

In any event, even assuming for the sake of argument that the judge erred by failing to give a stronger rebuke or instruction, Rojas's challenge would fail under the plain error standard, which applies here because Rojas did not request at trial the relief he now says he should have received.  See United States v. Mitchell, 596 F.3d 18, 25 (1st Cir. 2010); United States v. Kasenge, 660 F.3d 537, 541-42 (1st Cir. 2011).  To prevail under this standard, Rojas would have to show, among other things, that the error affected his substantial rights.  Mitchell, 596 F.3d at 25.  Although Rojas made an attack on Chau's credibility the cornerstone of his defense, and the prosecutor's statements sought to buttress Chau's credibility, the jury had no actual reason to doubt Chau.  More importantly, the audio and video tapes and physical evidence rendered attacks on Chau's credibility largely tangential and speculative.  The fact that Chau did not record all of his interactions with Rojas would not create doubt about Chau's testimony unless there was some independent reason to question him. And the fact that Chau's car was not searched for drugs before he met with Rojas would only be of significance if it was plausible to believe that Chau repeatedly obtained and turned over to the government the consequential amounts of cocaine involved, while Rojas supplied only fake product.  We cannot imagine that the jury

would have accepted the defense's attacks on Chau's credibility if only the judge had given a stronger instruction about the prosecutor's statements.

### B. The Playing of the Tape

Both sides agree that in playing portions of nine audio and video recordings during his closing statement, the prosecutor inadvertently included an audio recording not entered into evidence. Rojas made no objection at the time, but did request a mistrial after all of the closing statements were completed. Assuming for the sake of argument that Rojas's request for a mistrial was timely, we review the denial of the motion for abuse of discretion, requiring a showing of "clear prejudice." United States v. Pagán-Ferrer, 736 F.3d 573, 586 (1st Cir. 2013) (internal quotation marks omitted).

Here, any incremental impact of the unadmitted tape beyond that of the admitted tapes was so minimal that no one appeared to notice as it was played that it had not been admitted. This was thus not a case in which disputed evidence kept out for its substantial prejudicial impact was played to the jury. To the contrary, even on appeal Rojas can point to nothing in the recording that was either unfairly prejudicial or uniquely inculpatory. Adding belt to suspenders, the judge also gave a curative instruction as soon as he was alerted to the issue. See United States v. Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993).

Rojas provides no basis for doubting that the jury disregarded the evidence as instructed.

### III. Conclusion

For the reasons described above, we affirm Rojas's conviction.

<u>So ordered</u>.