**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3001
_____

UNITED STATES OF AMERICA

v.

JAMES STEPHENS,
Appellant
_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. Action No. 3-11-cr-00016-006)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 12, 2014
_____

Before: CHAGARES, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: December 17, 2014)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

James Stephens was convicted of conspiring to possess with intent to distribute a

controlled substance. He appeals, arguing that there was insufficient evidence to support

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

his conviction. For the reasons that follow, we will affirm.

I

The conspiracy in this case involved a drug distribution scheme in which Jerome Potter sold cocaine to Herbert Ferguson, who then sold the cocaine in powder and base (or "crack") form to Stephens and others. At trial, Ferguson testified for the Government, explaining that Stephens "started to work, selling cocaine and crack for [Ferguson] on St. John" three months before the conspiracy was foiled. App. 500. Ferguson explained that he sold Stephens half-ounce quantities of cocaine and crack two to three times per week.

During wiretapped phone calls, Ferguson and Stephens discussed Stephens selling drugs "for" Ferguson. App. 425. On the calls, Ferguson and Stephens made references to "fish," "Z," "candy," "plate," "rocks," and "biscuits," which Ferguson later explained were code words for the drugs. App. 590-91, 600, 606. The calls also referred to proceeds from the drug sales. For example, one call involved a discussion about how Stephens "had a thousand made already" but still owed Ferguson $600. App. 601.

Other calls pertained to the status of the drug operation. For example, in one call, Stephens told Ferguson that Larry's Landing, the place where Stephens and Ferguson sold drugs, was closed, so sales were "dead." App. 596, 603-04. In another, Stephens told Ferguson's wife that Ferguson should not "waste time" traveling to Larry's Landing because no one was buying. App. 604. During another call, Stephens informed Ferguson that individuals they thought were "working for the cops" were "coming inside Larry's Landing" and warned Ferguson that "they can't come in here." App. 603-04. Ferguson

2

testified that he and Stephens did not "allow [the suspected informants] to come in [to Larry's Landing] to sell anything." App. 604.

The jury convicted Stephens of conspiring to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. The jury further found that the conspiracy involved twenty-eight grams or more of cocaine base.[1] Stephens was sentenced to concurrent terms of 180 and forty-eight months' imprisonment and five years' supervised release. He now appeals.

## II[2]

To prove a conspiracy of the sort alleged here, the government must show "(1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal." United States v. Caraballo-Rodriguez, 726 F.3d 418, 425 (3d Cir. 2013) (en banc). It must "proffer sufficient evidence from which a jury could have concluded that each drug transaction in which [the defendant] was involved was a step in achieving the conspiracy's common goal of distributing [drugs] for profit."

---

[1] Stephens was also convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(b)(1)(B)(iii) and use of a communication facility to facilitate a drug crime in violation of 21 U.S.C. § 843(b), but he does not challenge these convictions.

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the grant or denial of a judgment of acquittal, reviewing the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (internal citations, quotation marks, and alterations omitted).

United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999) (internal quotation marks and citations omitted).

A "simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." Id. However, "an occasional supplier," and "an occasional buyer for redistribution[] can be shown to be a member of the conspiracy by evidence . . . of knowledge that she or he was part of a larger operation." Id. at 198 (quotation marks and internal citations omitted). As we said in Gibbs,

> where the defendant's only involvement in the conspiracy appears to be drug purchases, courts have looked to the surrounding circumstances to determine whether [he] is a mere buyer who had such limited dealings with the conspiracy that he cannot be held to be a conspirator, or whether he has knowledge of the conspiracy to the extent that his drug purchases are circumstantial evidence of his intent to join that conspiracy.

Id. at 199. In doing so, we consider a non-exhaustive list of factors, including "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." Id. Mutual trust may be shown by transactions involving large amounts of drugs and the extension of credit. Id. at 199-200. The presence of "one or more" factors furthers the inference "that [the] defendant has full knowledge of, if not a stake in, a conspiracy." Id. In other words, "when a defendant drug buyer has repeated, familiar dealings with members of a conspiracy, that buyer probably comprehends fully the nature of the group with whom he is dealing, is more

4

likely to depend heavily on the conspiracy as the sole source of his drugs, and is more likely to perform drug-related acts for conspiracy members in an effort to maintain his connection to them." Id. at 199.

Application of the Gibbs factors demonstrates that Stephens was a member of the conspiracy. First, Ferguson testified that Stephens had been selling drugs "for" Ferguson for three months, App. 425, and the recorded calls between Ferguson and Stephens reveal coded conversations detailing numerous transactions in which drugs flowed from Ferguson to Stephens and then from Stephens to his customers.[3] Thus, this is not a case "in which the evidence showed only a single or a very limited number of sales for personal use." United States v. Innamorati, 996 F.2d 456, 484 (1st Cir. 1993). Second, evidence of trust was apparent from Stephens's purchase of drugs on credit. Third, the evidence showed that Stephens and Ferguson had a "mutual stake" in the transactions, as demonstrated by Stephens's acting as a lookout for Ferguson. Gibbs, 190 F.3d at 199-200. Specifically, Stephens told Ferguson not to "waste time" coming to Larry's Landing

---

[3] Ferguson's recorded statements were properly admitted as coconspirator statements under Fed. R. Evid. 801(d)(2)(E), as there was sufficient evidence to corroborate the existence of a conspiracy beyond the recorded statements themselves, United States v. Turner, 718 F.3d 226, 231 (3d Cir. 2013), including Ferguson's testimony that Stephens sold drugs "for" him at Larry's Landing and made purchases of cocaine powder and cocaine base two or three times per week, App. 425. See United States v. Mitchell, 596 F.3d 18, 23 (1st Cir. 2010) (relying on cooperating witness's in-court testimony to corroborate that witness's out-of-court statements to establish existence of a conspiracy under 801(d)(2)(E)); United States v. Console, 13 F.3d 641, 659-60 (3d Cir. 1993) (relying on patient's testimony to corroborate doctor's out-of-court statements to establish existence of a conspiracy under 801(d)(2)(E)). Ferguson's statements were also corroborated by admissions Stephens made during the recorded conversations.

5

when drugs sales were slow and warned him when suspected informants attempted to sell drugs on their turf. App. 604. Moreover, Stephens acted to further the conspiracy by preventing the suspected informants from entering Larry's Landing to sell drugs. Drawing all inferences in favor of the Government, this evidence shows that Stephens had a stake in the cocaine distribution scheme beyond that of a mere buyer and was therefore a member of the conspiracy.

## III

For the foregoing reasons, we will affirm.