# United States Court of Appeals
## For the First Circuit

No. 09-1527

UNITED STATES OF AMERICA,

Appellee,

v.

PATRICK GOMES, a/k/a Pistol,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before
Boudin, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

George F. Gormley, by appointment of the court, with whom
Stephen P. Super and George F. Gormley, P.C. were on brief for
appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief for
appellee

April 13, 2011

*The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  Patrick Gomes was convicted in October 2008 on one count of conspiring to distribute cocaine base, 21 U.S.C. § 846 (2006), and two counts of distribution of cocaine base within a thousand feet of a school and/or aiding and abetting such distribution, 18 U.S.C. § 2 (2006); 21 U.S.C. §§ 841(a)(1), 860.  On this appeal, Gomes claims that the prosecutor engaged in witness vouching on cross-examination and in closing.  Some understanding of the trial evidence is necessary background.

The government's case was that Gomes had conspired with Alex Curet to distribute crack cocaine and had participated with Curet in two drug sales--one on September 25, 2007, and the other on October 3, 2007--in which Curet sold a cooperating witness ("CW") crack cocaine.  In both sales, recordings offered at trial disclosed Curet handing drugs to the CW and receiving money in return.  The government alleged that Gomes acted as both driver and lookout.

In the September sale, the CW wore hidden recording equipment and made the exchange inside a car driven by Gomes. Several officers testified that they saw that car travel past their observation points two or three times before coming to a stop, and one officer noted that the occupants were looking around.  Gomes was videotaped in the driver's seat during the drug deal, looking at the CW in the backseat and talking, and Gomes' attorney admitted in his opening statement that Gomes was "watching what went on"

during the transaction. Gomes' defense at trial was that he was merely giving his friend a ride and looking for parking as he cruised; but a government witness said there had been no shortage of parking spaces.

The October sale occurred in a car driven by the CW and containing hidden cameras. The video and audio recordings showed Gomes to be present outside the car immediately before and after the sale was made. In addition, Sergeant Detective John Fitzgerald testified that he observed Gomes and Curet leave a car that Gomes had driven; that Gomes went immediately to speak to the CW in the latter's car and was looking back and forth even when speaking to the CW; and that when Curet approached the CW to complete the sale, Gomes continued scanning and also turned his body to shield the transaction from view.

The strength of the government's case was Gomes' presence at both sales, his undeniable role as the driver in the first sale, and indications that he was performing surveillance for Curet as well. The weakness, if there was one, lay in the lack of any handling by Gomes of either drugs or money and the absence of any directly incriminating statements by Gomes during or after the event. Although Gomes was recorded in the second sale talking with the CW just before the buy, the conversation was benign.

During his defense, Gomes did not testify but sought to impeach Fitzgerald, primarily through the use of an expert of his

own.  Fitzgerald's testimony was especially significant since it identified Gomes as driving Curet to the scene and playing a secondary role in the sale itself.  Ultimately, the jury convicted Gomes on all three counts, finding that each sale involved five grams or more of cocaine base.  Gomes was sentenced to 78 months in prison, and he now appeals from his conviction on two grounds.

Gomes' first ground on appeal concerns the government's cross-examination of Gomes' expert witness, a former FBI agent, Richard Egan, who visited the scene and then offered testimony questioning Fitzgerald's ability to see clearly what was happening during the second sale.  Fitzgerald had witnessed the scene using binoculars but from a vantage point that was 100-150 feet or more away from the sale.  Fitzgerald said his view was crystal clear; Egan said his own replication showed a chain fence and some foliage complicating the sight lines.

In the course of cross-examining Egan, the prosecutor asked questions that resulted in the following exchange:

> Q.    And you have absolutely no basis to dispute the statement in [Fitzgerald's] report that from where he sat he had a clear view up Woodward Avenue and a clear view down George Street?
> A.    His report is what it says.  And I don't--I positioned myself where his report put me, and I didn't see it as clearly as he did.
> Q.    But my question to you, sir, is you have no basis for disputing his statement that on October 3 that [sic] he had a clear view up Woodward Avenue?

-4-

[GSA305:7-15] At this point, Gomes' counsel objected to the question as "comment on another witness' testimony," and the objection was overruled. Thereafter the following ensued:

> Q.    Now, when you were at the FBI, how serious a matter was it to put false statements in a report?
> A.    It's always a serious matter.
> Q.    How serious?
> A.    It's going to get you fired or in jail.

On appeal, Gomes argues that in these exchanges the prosecutor engaged in "improper vouching," which occurs where a prosecutor seeks to bolster the credibility of the witness--in this case, Fitzgerald--by expressing his own opinion that the witness is telling the truth.[1] Counsel's personal belief is neither impartial nor relevant. See Model Rules of Prof'l Conduct R. 3.4(e) (1983) (mandating that a lawyer shall not "in trial, . . . state a personal opinion as to . . . the credibility of a witness"). A further concern is that the prosecutor may thereby "place the prestige of the United States behind a witness." United States v. Torres-Galindo, 206 F.3d 136, 140 (1st Cir. 2000).

---

[1]United States v. Castro-Davis, 612 F.3d 53, 66 (1st Cir. 2010) ("We have held that '[a] prosecutor improperly vouches for a witness when she . . . impart[s] her personal belief . . . or impli[es] that the jury should credit the prosecution's evidence simply because the government can be trusted.'" (quoting United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003), cert. denied, 124 S. Ct. 2058 (2004))), cert. denied, 131 S. Ct. 970 (2011); see also United States v. Santana-Pérez, 619 F.3d 117, 122-23 (1st Cir. 2010); United States v. Gentles, 619 F.3d 75, 83 (1st Cir.), cert. denied, 131 S. Ct. 622 (2010); United States v. Flores-De-Jesús, 569 F.3d 8, 18 (1st Cir.), cert. denied, 130 S. Ct. 479 (2009).

The government says that the vouching objection was not adequately preserved by what defense counsel said to the judge ("comment on another witness' testimony") and that review should be only for plain error. Admittedly, vouching can be regarded as a species of comment and yet, so phrased, the objection is pretty uninformative. But we need not decide whether the objection was clear enough in context, because the prosecutor's remarks were not vouching at all.

Although the quoted questions were intended to undermine Egan's testimony and thereby bolster Fitzgerald's credibility, this does not make them vouching. Thus, no "vouching" would be involved in asking Egan to explain what basis he had for questioning Fitzgerald's testimony or whether a false report by an officer would be a serious matter (although the latter might be objectionable for other reasons). This is all that occurred if one understands the prosecutor's "no basis" remarks to be interrogative--rather than intended as assertions that might then be taken to express the prosecutor's own view.

Although the prosecutor's "questions" may look grammatically like assertions, the court reporter, who heard the tone of voice, understood both "no basis" sentences as questions, as the question marks in the transcript confirm. The prosecutor made clear in the second statement that he intended a question ("But my question to you, sir, is . . ."). And the witness

seemingly took the statements as invitations to respond to what most witnesses (and jurors) would probably have understood as a (hostile) request for a further explanation.

What defense counsel might have argued is that the quoted passages taken together approached a somewhat different question often regarded as improper, namely (in paraphrase), "Are you, a former FBI agent, calling the government's witness, Sergeant Detective Fitzgerald, a liar?" <u>See</u> <u>United States</u> v. <u>Thiongo</u>, 344 F.3d 55, 61 (1st Cir. 2003). But that was not what the prosecutor literally said, was not the objection in trial court, is not argued on appeal, and is not by any means plain error under settled case law.

By contrast, Gomes' second claim of vouching--to which we now turn--is technically stronger; it concerns a statement of the prosecutor during the government's rebuttal to Gomes' closing argument. The full quotation, with the objectionable language emphasized for clarity, went as follows:

> These are serious drugs. And he just sits there by the second buy? Okay, maybe you can figure he was in a daze the first day. He didn't know what's going on. But the second day, he knows exactly what's going on. Curet, Perez, Curet, Perez. Oh, shoot. What does he do? What he would have done, what he should have done, if he was anything other than a lookout, the kind of lookout that Dick Egan told you was used all the time, is he would have done what they did immediately after the buy and what you saw them do on that video. He would have walked across that street and said, Get me out of here. And he didn't

> because Alex Curet was his man, because the job for the day was being the lookout, <u>because John Fitzgerald gave you honest, candid, truthful testimony.</u>

The portion that we emphasize can be viewed as a personal assertion by the prosecutor, and the government's brief concedes it crossed the line into vouching. Formally, the statement is <u>not</u> expressly a personal opinion and could have been intended, and perhaps understood, as merely a description of what the prosecutor was urging the jury to conclude based on the evidence. And, in fairness, it followed a rather strong attack on Fitzgerald's honesty in defense counsel's own closing argument.

However, the prosecutor's statement could also be understood as an expression of his personal opinion and, if an objection had been made during closing, the jury would have been told that the prosecutor's own view was irrelevant and should have no weight in the jury's deliberations. But no objection was made, and while the judge could have intervened on his own, experienced trial judges are usually reluctant to pursue a matter that is not very important and that defense counsel may want left alone rather than emphasized even by a cautionary instruction.

An objection not preserved at trial can be pursued on appeal only if the error likely altered the outcome and created a miscarriage of justice. <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 734-37 (1993). Here, the government had a fairly strong case: a jury would likely think that driving Curet to one drug deal might be

mischance but that driving him to two was beyond innocent explanation. And even if some of Fitzgerald's detail were disregarded, Gomes' approach to the CW's car was damning enough, taken in conjunction with his behavior at the earlier sale.

Furthermore, the potential for harm from vouching varies, and it is likely to be more dangerous where the prosecutor flaunts the government's skills and purity of motive or where the context or the prosecutor's words imply private knowledge of the defendant's guilt that unfortunately cannot be shared with the jury. See, e.g., United States v. Manning, 23 F.3d 570, 572 (1st Cir. 1994). In this case, neither vice manifested itself. The jury heard and saw Fitzgerald, and the prosecutor's favorable adjectives can only have added very little.

Affirmed.