*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0122p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                                                                No. 10-3923
     *v.*

MICHAEL D. JACKSON,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00021-001—Gregory L. Frost, District Judge.

Argued: November 16, 2011

Decided and Filed: May 8, 2012

Before: MERRITT, BOGGS, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Dennis C. Belli, Columbus, Ohio, for Appellant. Laura M. Denton, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Dennis C. Belli, Columbus, Ohio, for Appellant. Laura M. Denton, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

     MERRITT, J., delivered the opinion of the court, in which CLAY, J., joined. BOGGS, J. (pp. 7–15), delivered a separate dissenting opinion.

_____

## OPINION

_____

     MERRITT, Circuit Judge. This is a direct appeal from conviction after a guilty plea entered by defendant Michael Jackson to one count of intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The presentencing report provided a sentencing range of 188-235 months due to Jackson's

1

status as a career offender. The district court agreed to delay Jackson's sentencing in anticipation that Congress would pass legislation reducing the penalties associated with the crack cocaine laws. The case is governed, and we are bound, by the recent case of *Freeman v. United States*, 131 S. Ct. 2685 (2011).

After waiting more than a year after Jackson entered his guilty plea in June 2009, the district court decided it could wait no longer and sentenced Jackson on July 16, 2010:

> [W]e waited and waited and waited to see if Congress would change the guidelines, or the statutes, with regard to crack versus powder cocaine. My information now indicates that it's a dead issue in Congress and that it's not going to change, at least in the foreseeable future. . . . . I was trying to give you the benefit of any change in the law that might occur, and it doesn't appear that it's going to. For that, I'm sorry . . . .

Sentencing Tr. at 16. The district court did not apply the "career offender" guideline sentence and sentenced Jackson to 150 months. This sentence was below the advisory guideline range for a career offender and within the old advisory guideline range for crack cocaine violations that would have otherwise applied to Jackson if he were not a career offender. Jackson filed a timely notice of appeal on July 26, 2010. On August 3, 2010, less than three weeks after Jackson was sentenced, the Fair Sentencing Act was signed into law and the ratio for crack versus powder cocaine was reduced from 100:1 to 18:1.[1] The Sentencing Commission promulgated emergency amendments to the

---

[1]The Fair Sentencing Act, enacted on August 3, 2010, increased the amount of crack cocaine necessary to trigger mandatory minimum sentences. Section 8 of the Fair Sentencing Act directs the United States Sentencing Commission to:

> (1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the enactment of this Act, in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987 (28 U.S.C. § 994 note), as though the authority under that act had not expired; and (2) pursuant to the emergency authority provided under paragraph (1), make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.

124 Stat. 2372, 2374 (2010).

In accordance with the above directive, the Sentencing Commission issued an emergency amendment to the United States Sentencing Guidelines, effective November 1, 2010, that amended § 2D1.1(c)'s drug quantity table and reduced the base offense level for various quantities of crack cocaine. *Temporary Emergency Amendment to Sentencing Guidelines*, 75 Fed. Reg. 66, 188 (Oct. 27, 2010). After Jackson filed this appeal, the United States Sentencing Commission unanimously voted to make this amendment, now designated Amendment 750 in Appendix C of the United States Sentencing Guidelines, retroactive. U.S.S.G. App. C, Amend. 759. The effective date of Amendments 750 and 759 is November 1, 2011.

sentencing guidelines, which became effective immediately, and other amendments were later promulgated that made the reduced guideline ranges for crack cocaine permanent and retroactive on November 1, 2011.  *See* U.S.S.G. App. C-Vol. III, Amend. 750 (effective Nov. 1, 2011) and Amend. 759 (making Amend. 750 retroactive effective Nov. 1, 2011).

On appeal, defendant seeks a remand to the district court for resentencing in light of the reduction in sentences under the crack cocaine guidelines issued by the Sentencing Commission and made retroactive during the pendency of his appeal.  The government and the dissent contend that defendant is not eligible for any reduction because his sentence was "based on" the career offender guidelines and not the crack cocaine guidelines.  The determination of whether an original sentence was "based on" a sentencing range that was subsequently lowered by the Sentencing Commission is a matter of statutory interpretation that we review *de novo*.

We recognize that the defendant's criminal history required the district court to consider the career offender guidelines, but in deciding whether the now-amended and retroactive crack cocaine guidelines apply to defendant, we focus on the range that was actually applied to the defendant in this case.  To do otherwise is to impose a harsh sentence on defendant when the severity of the old guidelines has been criticized by nearly every stakeholder in the criminal justice system, as well as by Congress.  It is clear in this case that the sentencing court agreed when it took into consideration the fact that the old crack cocaine guidelines were too harsh and would likely be amended.  We now give the district court the opportunity to revisit the sentence in light of the newly retroactive guidelines.

**I.**

When the original sentencing judge decides to vary from the career offender guideline range to some other range, it is fair to say that the sentence imposed is "based on" the adopted range and not the career offender range.  At least two ranges are in play, and it is a fiction to look at the sentence and say only one range exists.  And where, as

here, the sentencing judge made clear his disagreement with the crack cocaine guidelines then in effect, the opportunity to resentence is warranted in light of the revised, and now-retroactive, guidelines.

A review of the transcript demonstrates that the district court granted Jackson a downward variance of 38 months from the career offender guideline applicable to him based on the "untenable" disparity in the crack versus powder cocaine sentences. Sentencing Tr. at 16 (July 16, 2010) ("I . . . am willing to take into consideration the fact that you find yourself in a crack versus powder cocaine disparity that I believe, and I think any [rational]-thinking person believes, is untenable, that it really doesn't have any empirical support."). The sentence fell within the upper end of the advisory range (121-151 months) that would have applied to Jackson under the crack cocaine guidelines if he were not a career offender.

The district court varied downward from the career offender guideline to a sentence it believed was more reasonable based on the crack versus powder disparity — at least as far as we can tell from the transcript. The court mentioned no other reason that could account for the 38-month downward variance in the ultimate sentence. Jackson's sentence was "based on" the range produced by subtracting three levels from the career offender guideline. The district court rejected the career guideline range in favor of something else. The only "something else" he mentioned at the sentencing hearing was the "untenable" disparity in crack versus powder sentencing. Although we cannot know exactly how the court would have sentenced Jackson had the revised guidelines been in place in July 2010, the court expressed its desire to use the lower range in sentencing Jackson.

If a sentencing judge, having found a defendant to be a career offender, then decides to sentence defendant below the range for career offenders and notes his policy disagreement with the crack cocaine guidelines, ordinary review would say that the sentence was as much "based on" the crack cocaine guidelines as the career offender guidelines. *See United States v. Swint*, 442 F. App'x 614, 616 (2d Cir. 2011). Accordingly, the crack cocaine guideline ranges, which were lowered by the Sentencing

Commission and made retroactive during the pendency of Jackson's direct appeal, make defendant eligible for resentencing at the district court's discretion.  Any other reading is contrived.

The government and the dissent take the position that the applicable range is solely the career offender range because the defendant was eligible for sentencing pursuant to that range.  They fail to explain why that reading is more natural than the other, more lenient, reading, especially where the Commission has repeatedly stated that the disparity between powder and crack cocaine overstates the dangers posed by crack. We reject the continued formalistic application of the now-advisory guidelines and decline to adopt the narrow approach that would categorically deny a defendant the benefit of a sentencing reduction based on a retroactive amendment to the guidelines. We leave it to the district court to decide whether the retroactive guidelines should play a part in the sentencing of Jackson.

## II.

We also follow the explicit language in *Freeman v. United States*, 131 S. Ct. 2685, 2692-93 (2011), that instructs us to

> isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence.  Working backwards from this purpose, § 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence.

"Working backward," the crack cocaine guidelines were clearly "a relevant part of the analytic framework" used by the district court to determine Jackson's ultimate sentence. There is no language in Justice Sotomayor's concurring opinion that would distinguish this case from the *Freeman* case.  The unenhanced crack guidelines were "a relevant part of the analytic framework the judge used to determine the sentence."  The district court's comments from the sentencing hearing reveal that Jackson's sentence was plainly "based on," at least in part, the crack guidelines.  *See United States v. Rivera*, 662 F.3d 166, 173-75 (2d Cir. 2011).

Section 1B1.10 of the Sentencing Guidelines does not mandate that Amendment 750 be applied retroactively, but it gives the sentencing court the discretion to apply it. Because the issue was raised on direct appeal and Amendment 750 was made retroactive during the pendency of the appeal, we remand the case to the district court to allow it in the first instance to consider whether, in the exercise of its discretion, the revised and retroactive crack cocaine guidelines should be considered in determining Jackson's sentence. *See United States v. Coohey*, 11 F.3d 97, 101 (8th Cir. 1993).[2] For purposes of judicial efficiency, we affirm but remand to the district court for the opportunity to consider the retroactive crack cocaine guidelines *sua sponte* without the necessity of Jackson filing a motion pursuant to 18 U.S.C. § 3582(c). We take no position as to whether any change in Jackson's sentence is warranted due to the retroactive crack cocaine guidelines.

For the foregoing reasons, we remand the case to the district court consistent with this opinion.

---

[2]Ordinarily, a defendant must petition the district court for modification of sentence under Section 1B1.10. *See* 18 U.S.C. § 3582(c)(2). However, because Jackson raised this sentencing issue on appeal and the amendments were made retroactive during the pendency of his direct appeal, we see no need to force him to take this additional step. *See United States v. Wales*, 977 F.2d 1323, 1328 n.3 (9th Cir. 1992).

————————————

**DISSENT**

————————————

BOGGS, Circuit Judge, dissenting. This case calls for a careful and thoughtful analysis of the intricate interaction among cases, statutes, and the United States Sentencing Guidelines. Under such an examination, and applying the law that we are bound to apply, we should affirm, even if the majority perceives the result as "a harsh sentence." Maj. Op. at 3. I therefore respectfully dissent.

I

The facts of this case are relatively simple. The majority opinion, however, does not include some relevant information necessary to understand the legal principles that we are bound to apply. I therefore include a brief supplemental recitation of facts.

Michael Jackson pleaded guilty to a charge of possessing, with the intent to distribute, more than five grams of cocaine base. His plea agreement provided:

> the United States and defendant **MICHAEL D. JACKSON** stipulate and agree that the defendant's base offense level be calculated at 30 pursuant to USSG §§ 2D1.8(a) and 1B1.3. The United States and the defendant also stipulate and agree that, pursuant to USSG § 2D1.1(b)(1), . . . the defendant's specific offense characteristics should include a two-level enhancement for possession of a dangerous weapon. Defendant **MICHAEL D. JACKSON** understands that these stipulations or agreements are not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea. *Additionally, notwithstanding the stipulations contained herein, the defendant understands and acknowledges that he may qualify as a USSG § 4B1.1 career offender.*

R. 52 at 5 (Plea Agreement) (italics added).

The plea agreement, then, set Jackson's base offense level at 30. After a two-level increase for firearm possession, a two-level decrease for acceptance of responsibility, and a one-level decrease for timely notifying the authorities of his intention to plead guilty, the district court determined that, under the crack-cocaine

guidelines, Jackson's total offense level was 29, with a criminal-history category of IV, for a Guidelines range of 121–151 months.

As the plea agreement anticipated, however, Jackson's two prior drug crimes meant that he qualified as a career offender. Thus, his pleading guilty to an offense that carried a maximum penalty of forty years of imprisonment fixed his offense level at 34. USSG § 4B1.1(b)(2). After the three-level reduction for acceptance of responsibility and timely notifying the authorities of his intention to plead guilty, Jackson's final career-offender offense level was 31. His career-offender status also meant that his criminal-history category was automatically VI. Where, as here, "the offense level for a career offender from the [career-offender guidelines] is greater than the offense level otherwise applicable, the [career-offender] offense level . . . shall apply." USSG § 4B1.1(b). At sentencing, therefore, Jackson's applicable Guidelines range was his career-offender guideline range of 188–235 months.

Although the district court accepted Jackson's plea on June 26, 2009, it did not hold a sentencing hearing until more than one year later, on July 16, 2010. There, the court indicated that it delayed sentencing "to see if Congress would change the guidelines, or the statutes, with regard to crack versus powder cocaine."[1] It "was trying to give [Jackson] the benefit of any change in the law that might occur." However, the court stated, the law concerning crack and powder cocaine was "not going to change, at least in the foreseeable future," and sentencing should go forward. The court proceeded to explain: "The bigger problem here is not necessarily the crack versus the powder cocaine ratio, but the career offender issue. That's the big problem here in your case." Nevertheless, the district court was "willing to take into consideration the fact that [Jackson found himself] in a crack versus powder cocaine disparity that [the court believed was] . . . untenable [and] . . . really doesn't have any empirical support." Ultimately, the district court granted Jackson a downward variance from his applicable

---

[1]At the time Jackson was sentenced, the penalties for offenses involving cocaine in "base" or "crack" form were equivalent to those for 100 times more cocaine in powdered form.

guideline range, and imposed a sentence of 150 months of imprisonment and five years of supervised release.

On July 28, 2010, less than two weeks after the district court sentenced Jackson, Congress passed the Fair Sentencing Act of 2010. President Obama signed the Bill on August 3, 2010. On October 18, 2010, the United States Sentencing Commission promulgated emergency amendments to align the Sentencing Guidelines with the Fair Sentencing Act's new rules.[2] United States Sentencing Commission, *Supplement to the 2010 Guidelines Manual* 2 (2010). The emergency amendments took effect November 1, 2010. The Sentencing Commission made the amendments final, and expressly retroactive, on November 1, 2011. The Fair Sentencing Act itself, however, does not apply retroactively. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).[3]

## II

The issue this appeal presents is whether a defendant who pleads guilty to possession with the intent to distribute crack-cocaine, but has an applicable guideline range determined entirely by the *career-offender* guidelines, is entitled to remand for re-sentencing because of an expressly retroactive change to the *crack-cocaine* guidelines scheme. The answer is a clear "no."

## A

We have long held that, when a defendant's case is on appeal and "an amendment . . . applies retroactively under § 1B1.10(c), the proper procedure is for this court to affirm the sentence but to remand *for consideration of whether the prisoner is entitled to a sentence reduction under § 3582(c)*." *United States v. Poole*, 538 F.3d 644,

---

[2]The final rules appear in the Federal Register in May 2011, and took effect November 1, 2011. 76 Fed. Reg. 24960 (May 3, 2011).

[3]The Supreme Court recently heard argument in two now-consolidated cases, presenting the question whether the Fair Sentencing Act applies to defendants who committed crimes before the Act's effective date, but were sentenced after the Act took effect. *Dorsey v. United States*, No. 11-5683 (2011); *Hill v. United States*, No. 11-5721 (2011). This scenario differs from Jackson's, since Jackson both committed his crime and was sentenced before the Act took effect.

646 (6th Cir. 2008) (emphasis added); *see also United States v. Simmons*, 587 F.3d 348, 366 (6th Cir. 2009) ("[W]e nevertheless remand *because* Simmons is entitled to a 'second look' consideration pursuant 18 U.S.C. § 3582(c).") (emphasis added); *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997) (explaining that purpose of remand is "the opportunity to present an 18 U.S.C. § 3582(c)(2) motion for a reduction in sentence."). If, however, the amendment would not "alter the Guidelines range for this particular defendant," remand is unnecessary and inappropriate because the district court does not have the authority to modify its original sentence. *Simmons*, 587 F.3d at 367.

Our published cases, then, require a two-step analysis in a case like this one. First, the court must affirm the sentence, since, as we explained in *Ursery*, "[t]he current sentence is not erroneous, because it was properly imposed based on the guidelines in effect at the time of sentencing." 109 F.3d at 1137. Second, we must determine whether the defendant could qualify for a sentence reduction under the limited authority of § 3582(c)(2). Only if we answer this second question in the affirmative may we remand. *Simmons*, 587 F.3d at 366 ("the proper procedure for this court to follow is to affirm the sentence and *remand if the amendment would alter the Guidelines range for this particular defendant*.") (emphasis added); *see also United States v. Wright*, 428 F. App'x 608, 611–12 (6th Cir. 2011).

The majority accepts its first obligation, affirming Jackson's sentence. It does not take up its second charge. Nor could it, if it would lawfully reach its result here: a remand. *See infra* Part II.B. Instead, the majority remands with the somewhat cryptic instruction that the district court may "consider the retroactive crack cocaine guidelines *sua sponte* without the necessity of Jackson filing a motion pursuant to 18 U.S.C. § 3582(c)." Maj. Op. at 6.

If the majority means that Jackson need not file a § 3582(c) motion for the district court to consider changing his sentence, that instruction is perfectly acceptable. *Ursery*, citing the same Ninth Circuit footnote as the majority, explained that, while "ordinarily a defendant must first petition the district court for a sentence reduction . . . if the issue is raised for the first time on appeal, the court of appeals may remand for

consideration of the request."  109 F.3d at 1138.  If, however, the majority means that the district court, on remand, need not consider § 3582(c)(2), it has patently exceeded its authority.  "A district court may modify a defendant's sentence only as authorized by statute."  *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010).  The statute authorizing modification based on a retroactive change to the Sentencing Guidelines is 18 U.S.C. § 3582(c)(2).  On remand, the district court must adhere to the strictures of that statute.  We have no power to authorize a different result.

B

"Federal courts are forbidden, as a general rule, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 131 S.Ct. 2685, 2690 (2011) (internal quotation omitted).  Among these is 18 U.S.C. § 3582(c)(2), which permits re-sentencing when "a defendant . . . has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*."  18 U.S.C. § 3582(c)(2) (emphasis added).  The Sentencing Commission's policy statement provides: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [an expressly retroactive] amendment . . . does not have the effect of lowering the defendant's applicable guideline range."  USSG § 1B1.10(a)(2)(B).  Therefore, unless Jackson's applicable guideline range would change because of the newly amended *crack-cocaine* guidelines, he is not eligible for re-sentencing.

"The term 'applicable guideline range' in USSG § 1B1.10 refers to a defendant's pre-departure guideline range."[4]  *United States v. Pembrook*, 609 F.3d 381, 384 (6th Cir.

---

[4] The meaning of "applicable guideline range" in U.S.S.G. § 1B1.10 had "sharply divided the circuits."  *United States v. Rivera*, 662 F.3d 166, 172 (2d Cir. 2011).

> The First, [Second,] Third and Fourth Circuits [had held] . . . that when the sentencing judge departs from a career offender range to the range established by the offense guideline, a modification under § 3582(c)(2) is available if the latter range has been lowered by the retroactive amendment. The Sixth, Eighth and Tenth Circuits . . . held otherwise, declaring such defendants ineligible for reductions on the ground that their

2010); USSG § 1B1.10, cmt. 1(a).  At sentencing, Jackson's pre-departure Guideline range, and therefore also his applicable guideline range, was his career-offender range. This is so because his career-offender offense level was higher than his crack-cocaine offense level, and because his criminal-history category was automatically VI, by virtue of his classification as a career-offender.  *Id.* at § 4B1.1(b).  Today, Jackson's applicable guideline range would still be his career-offender range.  Indeed, that range is no different today than it was the day the district court sentenced him.  The career-offender guidelines use statutory maximum sentences to determine offense levels.  *Id.* at § 4B1.1(b)(1)–(7).  At sentencing, Jackson faced a statutory maximum of forty years. Under the Fair Sentencing Act, possession with the intent to distribute five grams of crack cocaine would carry a maximum sentence of twenty years.  Jackson, however, could not take advantage of this change because the Fair Sentencing Act, itself, is not retroactive. *Carradine*, 621 F.3d at 580.  Thus, he would still face a statutory maximum of forty years for his pre-Fair Sentencing Act crime, and his career-offender guidelines range would not change.  Jackson's crack-cocaine guidelines range, of course, would be lower today than it was in July of 2010.  But just as Jackson's higher career-offender range was the applicable guideline range at sentencing, so it is the applicable guideline

---

> sentences were "based on" the career offender guideline, which has not been amended, despite each sentencing judge having departed from that guideline to the range provided by the offense guideline.

*Id.* at 172 n.5.  In its 2011 amendments, the Sentencing Commission resolved this split, adopting our circuit's view by amending the commentary to § 1B1.10.  *See* USSG, App'x C, Amend. 759.  Now the commentary to § 1B1.10 explains:

> Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance).  Accordingly, a reduction in the defendant's term of imprisonment is *not authorized* under 18 U.S.C. § 3582(c)(2) and is *not consistent* with this policy statement if:  (i) none of the amendments listed in subsection (c) is applicable to the defendant; or (ii) *an amendment listed in subsection (c) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision.*

USSG § 1B1.10, cmt. 1(a) (emphasis added).  Because this policy statement is binding in a § 3582(c) proceeding, *see Dillon v. United States*, 130 S. Ct. 2683, 2693 (2010); USSG § 1B1.10, cmt. Background ("The Supreme Court has concluded that proceedings under section 3582(c)(2) are not governed by *United States v. Booker*, 543 U.S. 220 (2005), and this policy statement remains binding on courts in such proceedings."), the Sentencing Commission's interpretation of the term "applicable guideline range," which comports with our precedent, controls.

range now.  USSG § 4B1.1(b); *Pembrook*, 609 F.3d at 384.  Therefore, the amended crack-cocaine guidelines do not "have the effect of lowering the defendant's applicable guideline range,"  USSG § 1B1.10(a)(2)(B), and "[a] reduction in the defendant's term of imprisonment . . . is not authorized under 18 U.S.C. § 3582(c)(2)." *Ibid. See also United States v. Curet*, 670 F.3d 296, 309 (1st Cir. 2012) ("While the amendments to the guidelines are retroactive, they are of no help to Curet because he is a career offender. If only the amended guidelines were the basis for the sentence, Curet would have a somewhat reduced base offense level under the amended drug quantity table . . . .  But this base offense level is irrelevant given Curet's career offender status. . . . [His] career offender offense level . . . renders irrelevant any reduction in the base offense level.").

In this scenario, we must, according to our circuit's published cases, affirm without remanding. *Poole*, 538 F.3d at 646; *Simmons*, 587 F.3d at 366.  Nor should we remand so that Jackson may make an argument that he is quite literally bound to lose.

Far from being "contrived," Maj. Op. at 5, "formalistic," *ibid.*, or "a fiction," Maj. Op. at 3, this is the outcome that our precedents, and the statutes and Guidelines that we are obligated to apply, compel.  This outcome may not accord with a preference that Jackson not receive "a harsh sentence," *id.* at 3, or for a different, "more-lenient, reading" of federal sentencing law, *id.* at 5, but binding cases and statutes require it.

### III

*Freeman* does not compel a contrary conclusion.  In *Freeman*, the Supreme Court addressed "whether defendants who enter into plea agreements that recommend a particular sentence as a condition of the guilty plea may be eligible for relief under § 3582(c)(2)." *Freeman*, 131 S. Ct. at 2690.  Justice Kennedy's plurality opinion argued that the answer was an unqualified "yes," reasoning that: "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and, when it is, the defendant should be eligible to seek § 3582(c)(2) relief." *Id.* at 2695.

Justice Sotomayor wrote a concurring opinion, which took a slightly different tack. As a rule, she reasoned,

> the term of imprisonment imposed by a district court pursuant to an agreement authorized by Federal Rule of Criminal Procedure 11(c)(1)(C) is "based on" the agreement itself, not on the judge's calculation of the Sentencing Guidelines. However, I believe that if a (C) agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission, the term of imprisonment is "based on" the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2).

*Id.* at 2695. Justice Sotomayor's opinion, in other words, holds that, when a plea agreement expressly incorporates a guidelines *range*, rather than a specific term of imprisonment, the defendant's sentence is "based on" the Sentencing Guidelines, and is thus amenable to review under § 3582(c). Her opinion does not address the meaning of "applicable guideline range" in USSG § 1B1.10, and therefore leaves *Pembrook*'s holding and the Sentencing Commission's determination on that point undisturbed. Justice Sotomayor's concurrence, we have explained, qualifies as *Freeman*'s holding because it "is the narrowest ground for the Court's decision." *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011).

Although it does not change the proper interpretation of the phrase "applicable guideline range," *Freeman* does resolve a threshold question that has some bearing on this case. Jackson's plea agreement specifically provides for sentencing pursuant to the Guidelines. Thus, his sentence is "based on" the Guidelines, rather than his Rule 11(c) plea agreement. *See Freeman*, 131 S. Ct. at 2695. This means that Jackson's having been sentenced after signing a Rule 11(c) plea agreement does not prevent him from seeking relief under § 3582(c)(2) at the threshold.

What *Freeman* does not do, however, is vitiate Jackson's obligation to *satisfy* § 3582(c)(2)'s requirements before he is eligible for relief. Thus, for the district court to have the power even to consider re-sentencing, Jackson would have to show both: (1) that he was sentenced "based on" a guideline that was subject to an expressly

retroactive amendment to the Sentencing Guidelines; and (2) that "a reduction [in sentence] is consistent with applicable policy statements issued by the Sentencing Commission," to wit: USSG § 1B1.10.  18 U.S.C. § 3582(c)(2).

Thus, even if I were to accept the majority's claim that, because of *Freeman*, Jackson's sentence was "based on" the crack-cocaine guidelines—which I do only for the sake of argument—he still would not qualify for relief.  As explained above, Jackson's applicable guideline range was at sentencing, and still is today, his career-offender range.  Where, as here, an expressly retroactive amendment "does not have the effect of lowering the defendant's applicable guideline range," "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)."  USSG § 1B1.10(a)(2)(B). Hence, even accepting the majority's position about the basis of Jackson's sentence in light of *Freeman*, remand still would not be proper because the expressly retroactive amendment to the *crack-cocaine* guidelines did nothing whatsoever to change Jackson's "applicable guidelines range."  *Pembrook*, 609 F.3d at 384.

IV

This case is complex, but it is not close.  Principled application of the precedents that we are bound to apply can lead to only one conclusion: the panel must affirm Jackson's sentence, and Jackson is not entitled to remand.  I therefore respectfully dissent.